AUSTIN *et al. v.* COLLIER *et al.*

1. In a suit for the recovery of an interest in land, where the defendants claim the entire ownership thereof under the will of a person, and introduce evidence tending to show that prior to the death of this testator the plaintiff had sold to him all interest she ever owned in the land, his death did not render the plaintiff incompetent as a witness to testify touching the transactions she had with the deceased in relation to a sale of the land in controversy ; for the defendants in such a case did not, under the evidence act, occupy the position of representatives of their testator simply because they held the land in dispute as legatees under his will.

2. It was, therefore, in such a case, error to exclude the testimony of one of the plaintiffs, who was offered as a witness in her own behalf to testify as to transactions she had with the deceased in his lifetime touching the question as to whether she had sold to him the land in controversy. Because of this error, the judgment of the court below refusing a new trial as to this party plaintiff is reversed.

3. The error above indicated not in anywise affecting the other party plaintiff in the present case, and there being, as to him, no error of law committed on the trial, and the evidence being amply sufficient to sustain, if not to demand, the verdict in favor of the defendants against this plaintiff, the judgment refusing a new trial as to him is affirmed.

　　　Argued November 3, — Decided November 27, 1900.

Equitable petition. Before Judge Reagan. Upson superior court. November term, 1899.

*J. A. Cotten* and *Lester & Lester,* for plaintiffs.
*M. H. Sandwich* and *Allen & Tisinger,* for defendants.

LEWIS, J.    Mrs. Sallie E. Austin brought suit in Upson superior court against J. O. Whatley, Robert M. Collier, Mrs. Gussie L. Collier, and the latter's two minor children, Lillian and William Collier, claiming a one-fourth undivided interest in a tract of 240 acres of land known as the old Whatley place.    She admitted in the petition that the defendants owned the remainder of that land, J. O. Whatley one fourth, Robert M. Collier one fourth, and Mrs. Gussie L. Collier and her two children the remaining fourth.    James O. Whatley filed a proceeding in the nature of an intervention, admitting the allegations in plaintiff's petition, and really joining her on the trial of the case below as one of the plaintiffs in the suit, seeking to establish his one-fourth interest, which was likewise held adversely by the remaining defendants.    It seems this was an equitable petition asking for a sale and partition of the land among the owners in common.    The defendants filed answers, denying any title in either one of the plaintiffs to any part of the land sued for, and claiming that each one had sold his and her interest in the same to R. M. Collier Sr., during the latter's lifetime, and that defendants held under the will of R. M. Collier Sr.    The plaintiffs claimed under the will of James G. Whatley, who it seems owned the land in dispute, and died seized and possessed of it in 1860, leaving a will.    The particular tract of land was devised by his will to his widow, Susan J. Whatley, for her life, and she went into possession of the same under that will, and remained in possession until her death.    When James G. Whatley died, he left surviving him his said widow, his son, James O. Whatley, and his daughter, the original petitioner in this case.    The will further provided that at the death of the widow all the property willed to her should be equally divided among the surviving offspring of the widow, whether by testator or by any future husband she might marry.    It appeared on the trial that Susan J. Whatley, the widow, married Robert M. Collier Sr., in the year 1865. She afterwards had by this last husband two children, Robert M. and William E. Collier.    Under the Whatley will, then, the petitioner, James O. Whatley, and these two Collier children Robert M. and William E., were designed to be owners of this land after the death of their mother, Mrs. Susan J. Collier, formerly Mrs. Susan J. Whatley, who died in the year 1895, leaving two children by her last husband, Robert M. and William E. Collier.    In 1896 said William E. Collier died, leaving as his sole heirs his widow, Mrs.

Gussie L. Collier, and their two children, Lillian and William Collier. If the Whatley will were enforced by these parties in life at the time of this suit, and none of the parties had disposed of their interest under the will, the two plaintiffs would each have owned a one-fourth interest in the property; Robert M. Collier would have owned one fourth, and Mrs. Gussie L. Collier and her two children, as the widow and children of William E. Collier, would have owned his fourth. But the defendants claim that both plaintiffs sold out their interest to Robert M. Collier Sr. during his lifetime, and they claim under the will of Robert M. Collier Sr. after he had acquired complete title to the entire interest in the 240 acres of land in dispute. They introduced that will in evidence, showing that one half of the 240 acres was given to Robert M. Collier, and the other half of the same tract to William E. Collier, which, of course, went to his heirs after his death. He died intestate. It appears that Robert M. and William E. Collier went into possession of the land after the death of Robert M. Collier Sr., and remained in possession until the death of William E. Collier; and after the death of William E. Collier his widow and two children above named went into possession of the land with Robert M. Collier. They had for some time been holding adverse possession when this suit first originated.

This case was tried upon testimony introduced both by plaintiffs and defendants, and, after the charge of the court, the jury returned a verdict for the defendants; whereupon Mrs. Sallie E. Austin and J. O. Whatley, acting jointly, moved for a new trial. The motion was overruled, upon which ruling they assign error in their bill of exceptions brought to this court by them jointly as plaintiffs in error. The controlling issue of fact was whether or not, as claimed by the defendants, the plaintiffs had sold their interest in the land involved to R. M. Collier Sr. during his lifetime.

1. One ground in the motion for a new trial alleged error by the court in refusing to allow certain interrogatories of Mrs. Austin, and her answers thereto, to be read or to go to the jury as evidence in the case. The interrogatories are as follows: "Please state whether or not the receipt had any reference to the lands in dispute? Did you or not ever sell or intend to sell to R. M. Collier your interest in the lands in dispute?" Both these questions, it appears from the recital in the motion, were answered in the negative. The ques-

tions and answers were objected to and disallowed by the court on the ground of the death of R. M. Collier Sr. The first question we do not think merits any consideration, from the fact that the receipt is not set forth at all in the motion, nor is there anything in the motion to indicate the nature of the receipt about which inquiry is made. This last question, however, though answered in a mere monosyllable, was on a vital issue in the case. We think the judge erred in sustaining the objection on the ground of the death of R. M. Collier Sr. Under a literal construction of the evidence act, as embodied in the Civil Code, § 5269, we do not think the death of Robert M. Collier Sr. rendered incompetent Mrs. Austin as a witness in her favor, even with reference to transactions had between herself and the deceased, notwithstanding the defendants claimed the land in dispute as legatees under the will of the deceased. These defendants are neither indorsees, assignees, transferees, nor personal representatives of the deceased, and hence do not fall within the class mentioned in subdivision 1 of that section of the code. They can not, of course, be classified under any of the other divisions in that section. It is true this court has decided in *Johnson* v. *Champion*, 88 *Ga.* 527, that "A widow whose husband died intestate after the passage of the act of December 12th, 1882 (Acts of 1882–3, p. 47), leaving no lineal descendants, is, in the absence of evidence that he left debts which are still unpaid, entitled to his whole estate without taking out letters of administration thereon. And being so entitled, she is his 'personal representative,' and in a suit against her by one claiming to be a creditor of her husband, the plaintiff is not a competent witness to establish an alleged contract between himself and the deceased out of which the alleged indebtedness arose." But that is not this case. It was simply decided in the case cited that the widow occupied the position of a representative of the estate, by virtue of a special act of the legislature stated in the decision. See also *McElhaney* v. *Crawford*, 96 *Ga.* 177. In *Gunn* v. *Pettygrew*, 93 *Ga.* 327, this court decided: "By the terms 'personal representative' the statute embraces only an administrator, executor, or other person entitled to represent the decedent in the ownership or management of his general estate. It follows that one contesting with the widow the title of the decedent to property set apart or sought to be set apart for a year's support is not incompetent as a witness against her because

of her husband's death." *Flowers* v. *Flowers,* 92 *Ga.* 688; *Neely* v. *Carter,* 96 *Ga.* 204; *Buchanan* v. *Buchanan,* 103 *Ga.* 90–91.

Whether or not Mrs. Austin sold her interest in the property involved to R. M. Collier Sr. was, of course, a vital question in the case.   There was sufficient evidence in favor of the defendants to support the verdict against her; but the receipt which was introduced did not show upon its face that it referred to this or any particular land.   We think, therefore, that the error of the court in refusing to allow her to testify upon this point entitles her to a new trial, it being for the jury to say, after hearing all the legal evidence offered upon the subject, what the truth of the matter is.

2. This error, however, does not require a new trial to be granted as to the other plaintiff, James O. Whatley.   The testimony of Mrs. Austin excluded had no effect upon his rights in the premises, and could not in anywise have influenced the jury in arriving at a conclusion on the issue of fact between him and the defendants. It appears from the record that the mother of James O. Whatley, Mrs. Susan J. Whatley, afterwards Mrs. Susan J. Collier, never had a life-estate in but one piece of property, and that is the tract of land in dispute.   The receipt of Whatley, which it seems he wrote himself, was in the following language: "Received of R. M. Collier three hundred and forty-four ($344.00) dollars, it being a part of my father's estate and belonging to my mother during her lifetime.   October 14th, 1884."   That receipt was signed by him.   There was no explanation of it.   This land did belong to his mother during her lifetime; the only property of his father's estate that did.   In addition to this, there was ample testimony in behalf of the plaintiff that he admitted to different witnesses that he had sold his interest in the land in dispute to R. M. Collier Sr.   We therefore think the verdict of the jury, if not demanded, was overwhelmingly sustained by the evidence as against this plaintiff, and we therefore refuse to reverse the judgment of the court denying a new trial so far as he is concerned.

3. The above is the only ground of the motion which we think it necessary to discuss or specifically notice.   So far as the evidence is concerned, we think it was sufficient to support the verdict against both defendants, certainly against James O. Whatley.   One ground in the motion for a new trial, for instance, is that the court erred in charging the jury as follows: "If you believe from the evidence

in this case that Mrs. Austin or Dr. Whatley, or both of them, made a verbal or parol sale of their interest in this land to Robert M. Collier, and that he paid the full purchase-price agreed upon and took possession of the property, that would convey to Robert M. Collier a complete equity to the lands, which would be such a title as he could convey by sale or otherwise. And if you find that such a sale was made of the land, and the full purchase-price was paid and he went into possession—if you believe from the evidence that that is true,—then these plaintiffs, Mrs. S. E. Austin and Dr. Whatley, would have no future interest in the land." It was contended by counsel for plaintiffs in error that that charge was error, because not applicable to the issues in the case. It was contended that the defendants claimed title to the land under a written transfer, in their plea. Upon examining the plea, we do not agree with this position of counsel at all. The contention in the answer was that Robert M. Collier Sr. bought the land, paid the purchase-money for the same, and obtained a transfer, but it was nowhere pretended that that transfer was in writing. The answer does not indicate that they claimed a deed in regular form had been made. The whole question raised by the pleadings and the evidence was whether, in point of fact, Collier had paid the full purchase-money for the land under the agreement, and this charge of the court was entirely pertinent to the issues in the case.

Another ground in the motion alleged error because the court, over objection of plaintiffs' counsel, permitted certain witnesses by their testimony to contradict the plainly expressed terms of the written contracts under and by which the defendants claim that the plaintiffs conveyed the land in dispute to their testator, Robert M. Collier. The testimony of the witnesses referred to did not, in the light of this record, undertake to impeach the terms of any writing between the parties. On the contrary, it was mainly to establish the admissions of the parties plaintiff indicating that they had sold their interest in the land in dispute and received their money therefor from Robert M. Collier Sr. These admissions tended to establish the parol agreement insisted upon by defendants, which, if true, worked a complete equitable title to this land in their testator; and, therefore, his bequest to them of the property would convey an absolute title therein.

There were a few other grounds in the motion, but they are not of sufficient merit to call for any discussion.

*Judgment in part reversed, and in part affirmed. All the Justices concurring.*