## HENDRICK *et al. v.* DANIEL.

1. Under Civil Code, § 5269, par. 1, in an action of ejectment the opposite party to the grantee of a deed from a deceased person is not competent to testify in his own behalf to conversations and transactions with such deceased person, affecting adversely the title conveyed by the deed; and under par. 5 the agent of such a party is likewise incompetent.
2. It is not error to exclude evidence as to matters about which there is no dispute.
3. This court will not consider a ground of a motion for a new trial, complaining of the refusal of the court to allow counsel to ask a witness a stated question, where it does not appear what answer to the question was expected.
4. The evidence amply sustained the verdict.

Argued November 21, 1903. — Decided January 13, 1904.

Complaint for land. Before Judge Harris. Heard superior court. May 28, 1903.

*R. W. Freeman, W. C. Wright,* and *D. B. Whitaker,* for plaintiff in error. *F. S. Loftin, W. H. Daniel* and *S. Holderness,* contra.

CANDLER, J.    Suit was brought by John W. Daniel against Hugh L. Hendrick, to recover certain lands described in the petition.    Daniel claimed under two deeds from Jeptha H. Daniel Sr., dated respectively January 1, 1898, and April 23, 1898, conveying the land in dispute.    At the return term the defendant answered that he was in possession of the land only as agent for his wife, Helen Hendrick, and at that term she was made a party defendant.    In their plea they admitted Mrs. Hendrick's possession, and denied the plaintiff's title or that he had any right to the possession or the rents and profits of the land.    They further averred that in the fall of 1889, Jeptha H. Daniel, the grantor in the deeds to the plaintiff, who was the father of both the plaintiff and Mrs. Hendrick, put Mrs. Hendrick in possession of the land and expressed the desire that she should have it as a gift or advancement from him ; that after this declaration, with the express understanding that the lands were a gift from Jeptha H. Daniel to his daughter, Mrs. Hendrick, she, by and through her husband Hugh L. Hendrick, went into possession and has so remained ever since ; and that her possession has been continuous and exclusive for a space of more than seven years in the lifetime of Jeptha H. Daniel, without the payment of any rent for the land, the seven years having elapsed before the making of the alleged deeds from Jeptha H. Daniel to the plaintiff.    It was therefore claimed that Mrs. Hendrick was seized of the land in fee before the making of the deeds set out in the plaintiff's abstract of title.    The plea also set up, that, after going into possession of the land under this parol gift, Mrs. Hendrick, acting through her husband as her agent, made substantial and valuable improvements on the property, which were enumerated.    At the trial evidence was introduced on both sides.    The jury returned a verdict for the plaintiff for the premises sued for, and mesne profits.    The defendants made a motion for a new trial, which was overruled, and they excepted.

1.    While the motion for a new trial as amended contains numerous grounds, the case is really controlled by a single question, viz., whether the court below erred in excluding testimony as to transactions and communications between Mrs. Hendrick and her husband and agent on the one side, and Jeptha H. Daniel, under whom both the plaintiff and Mrs. Hendrick claimed, and who had died prior to the bringing of the suit, on the other.    This evi-

dence was excluded as coming within the prohibitions respectively of the Civil Code, § 5269, par. 1, 5, the court holding, in effect, that John W. Daniel, the plaintiff, was an assignee or transferee of his deceased father, and therefore Mrs. Hendrick could not testify in her own favor against his title; and that her husband, who was admitted to have been her agent in all the transactions relating to the land, was likewise, by reason of his agency, incompetent to testify as to such transactions. The question squarely presented, therefore, is, where suit is instituted to recover possession of land by a grantee in a warranty deed, can the opposite party or his agent testify to conversations or transactions with the deceased grantor, the nature of which is to show an adverse title? This, in turn, renders necessary a discussion as to whether a grantee of land is included in the word "assignee" or "transferee" as used in the code section referred to.

This court is thoroughly committed to the proposition that the act of 1889 and the subsequent acts amendatory thereof, the provisions of which have been embodied in Civil Code, § 5269, are to be literally construed, and that nothing will be added to or taken from them by judicial construction. The original act (Acts 1889, p. 85) provided only for cases "where any suit is instituted or defended by a person insane at the time of trial, or by the personal representative of a deceased person." In the case of *Woodson* v. *Jones*, 92 *Ga.* 662, which was decided November 6, 1893, this court held that under the act of 1889, "the maker of a negotiable promissory note is a competent witness in his own favor to prove payment thereof to the payee before the note was transferred, although the payee has since died, the action being by the indorsee of the note, and the personal representative of the payee not being a party thereto on either side." In the opinion the present Chief Justice, referring to former decisions to the effect that the terms of the act of 1889 would not be extended by construction, but would be construed to the letter, quoted from the act to the effect that "there shall be no other exceptions allowed under this paragraph, by any court, than those herein set forth." The General Assembly, which was then in session, seeing the deficiency in the act of 1889, as illustrated by the case cited, immediately thereafter, on December 9, 1893, amended it by providing that it should extend to cases where "any suit is instituted or defended . . by the

endorsee, assignee, transferee, or by the personal representative of a deceased person." Acts 1893, p. 53.

The literal meaning of the word "endorsee" is easily ascertained by reference to its etymology. Endorsement applies to such written entries as may be made on the back of notes, checks, etc., and may transfer title to the paper on which it is made. The literal meaning of the word "assignment" is much broader. In its most general sense it applies to the transfer of interest in all classes of property, real, personal, or mixed. Bouvier gives as the definition of the verb "assign," to make or set over to another, and of "assignment," a transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein; a transfer by writing, as distinguished from one by delivery. Black's Law Dictionary (p. 97) defines the word as "the act by which one person transfers to another, or causes to vest in that other, the whole of the right, interest, or property which he has in any realty or personalty, in possession or in action, or any share, interest, or subsidiary estate therein. . . In a narrower sense, the transfer or making over of the estate, right, or title which one has in lands and tenements." The same authority defines the verb "assign," as used in conveyancing, as follows: "To make or set over to another; to transfer; as to assign property, or some interest therein." It seems clear that, technically speaking, the word "assignment" refers to a transfer of interest in land alone, and that to apply it to a transfer of a note or similar paper is to give it a broad, rather than a technical meaning. Literally, it most assuredly covers a conveyance of land by deed.

The word "transfer," in its literal meaning, is broader than "assignment," and all the authorities agree in a definition which in effect covers any act by which the owner of anything delivers or conveys it to another with the intent to pass his rights therein. In like general terms, a transferee is one to whom a transfer is made. Following the former decisions of this court, therefore, and giving to the words "assignee" and "transferee," as used in the code, a literal construction, we are forced to the conclusion that they cover the grantee in a conveyance of land. These words are the broadest that could possibly have been used. A literal construction of either necessarily includes a vendee, grantee,

or donee. That such was the meaning intended to be given them by the lawmaking power we think can easily be established by an application of any or all of the well-known rules for the construction of statutes. The act of 1889 and the amending act of 1893 are both remedial statutes. The evil sought to be cured was that the living took advantage of the dead, the sane of the insane, by giving testimony the power to contradict which was buried in the .tomb or obscured by dethroned reason. By the decision of this court in the case of *Woodson* v. *Jones*, supra, it was brought to the 'attention of the General Assembly that the act of 1889 failed of its full purpose, and it was accordingly amended by the act of 1893. To use a homely metaphor, by inserting in the law as it stood the word " endorsee " the legislature healed the particular malady pointed out by the decision in the case cited, and then, to guard against a relapse, or the possibility of a similar attack in the future, it inoculated the patient with the words " assignee " and " transferee." The mischief as it existed prior to the passage of the act of 1889 was plain. That act did not accomplish its full purpose, and so, in 1893, the General Assembly amended it so as to cover all possible cases where the same mischief threatened, and where estates, real, personal, or mixed, of deceased or insane persons might otherwise be obtained or damaged by allowing parties to suits affecting such estates to testify to communications and transactions with such deceased or insane persons. With the full nature and extent of the evil clearly apparent, we can not believe that the General Assembly intended to protect the estate of a deceased endorsee of a note against the testimony of the living maker, at the same time allowing it to be wronged by nullifying his warranty deed to a tract of land. On what theory it can be supposed that the General Assembly sought to protect the purchaser of a note and leave unprotected the grantee of a piece of real estate we are at a loss to conceive.

The case of Elliott v. Shaw, 32 Ohio St. 431, cited by counsel for the plaintiff in error, we do not think is at all in point. That case held simply, that, under an Ohio statute rendering incompetent as a witness the adverse party in interest to the grantee of a deceased person, the maker of a note would not be incompetent to testify in his own behalf against the assignee of the deceased payee; and the main reason given for the decision was that the

lawmaking power clearly intended to restrict the statute being construed to the adverse party in a suit by or against the grantee in a conveyance of realty.    Applying to our own law the well-defined rules of construction, and having in view the purpose of the act of 1889 and the evil sought to be remedied, we are clear that it was the intention of the act of 1893 to include and protect all endorsees, all assignees, and all transferees of all kinds of property, real, personal, and mixed.    It follows that the court below did not err in excluding the testimony under discussion.

2, 3.    The other grounds of the motion disclose no error requiring the grant of a new trial.    One of these grounds complains of the refusal to allow counsel to ask a named witness a specified question, but does not state what answer to the question was expected; and hence it can not be considered.    *Griffin* v. *Henderson*, 117 *Ga.* 382.    Others complain of the rejection of evidence as to matters about which there was no dispute between the parties.    A careful examination of the brief of the evidence shows that there is no merit in the contention that the verdict was contrary to law and the evidence.    There was abundant evidence to sustain the verdict, and for no reason set out in the motion did the court below err in refusing to grant a new trial.

*Judgment affirmed.    All the Justices concur.*