## HENDRICKS v. ALLEN et al.

1. It appearing that the court submitted the case to the jury upon a theory or theories not authorized by the pleadings or the evidence, a new trial should have been granted.

2. It was not competent for the plaintiff to testify as to a transaction between himself and one since deceased, the effect of which would be to impeach the right of the deceased to convey the property in controversy to another person, when such other person or his personal representative was a party defendant in the case.

Submitted March 13,—Decided April 15, 1907.

Equitable petition. Before Judge Felton. Bibb superior court. February 7, 1906.

Allen brought suit against Clifford Locke, administrator of the estate of R. D. Locke, deceased, and Hendricks, to compel the administrator to make him a deed to a certain tract of land, and to enjoin Hendricks from foreclosing a mortgage on the land, and to cancel the mortgage. The petition alleges, that on October 13, 1890, the plaintiff applied to said R. D. Locke for a loan of $135, with which to purchase the land in controversy; that Richard Nelson loaned the money "to said Locke for petitioner to purchase said land;" that "said land was then purchased [from Kahn and others] for said sum of $135 by petitioner, and a deed was executed to said land in favor of petitioner, according to petitioner's understanding, and was to be kept in the possession of said Locke until petitioner should pay off said loan which said Locke had procured from said Nelson for petitioner;" that the petitioner finished paying Locke the amount due him by petitioner on said loan, about September 1, 1892, and petitioner "then agreed with said Locke that he, the said Locke, should continue to keep possession of petitioner's deed to said land, as petitioner was then indebted to said

Locke for a balance due on material that was used by petitioner in building a house on said land and making other improvements thereon. Petitioner finished paying the balance due said Locke on said material some time in July, 1893," but, having confidence in Locke, petitioner allowed said deed, "which he believed was in possession of said Locke," to remain in his possession, "not knowing that there had never been such a deed in petitioner's favor." The petition further charges, that a deed to the land in controversy was executed on October 13, 1890, by said Kahn (and others) to Nelson, and that on February 28, 1893, a deed to the same land was executed by said Nelson to Locke, which "petitioner says . . was a fraud on petitioner." It is alleged that "petitioner has been in possession of [the premises in dispute] since the 13th day of October, 1890, and made valuable improvements on the strength of said purchase, building the house in which he now lives and has lived in continuously since the 28th day of December, 1890, under said claim of purchase." And it is further alleged, that on April 25, 1894, said Locke executed to defendant Hendricks, a mortgage on said land, and "petitioner says that said mortgage was executed without his knowledge or authority, and that the execution of the same was fraudulent and is a cloud on petitioner's title." The defendant Locke filed an answer, in which, for the want of sufficient information, he neither admitted nor denied the allegations of the petition. Hendricks filed an answer and cross-petition, denying that the plaintiff had any title or interest in the land in dispute, and praying for a decree that the land be sold and the proceeds thereof applied toward the payment of the debt due on the mortgage. The case proceeded to trial, and the jury returned a verdict in favor of the plaintiff, and "that the administrator execute title to said plaintiff, also that the mortgage held by defendant Hendricks be canceled." Hendricks moved for a new trial, upon the ground that the verdict was without evidence to support it, and because of various rulings of the court, and portions of the charge to the jury. The motion was overruled, and he excepted.

*John R. L. Smith,* for plaintiff in error.

*F. R. Martin* and *Akerman & Akerman,* contra.

BECK, J. (After stating the facts.)

1. The motion for a new trial in this case embraces numerous

grounds which it will not be necessary for us to examine and discuss in detail, because a new trial is to be granted for the reason that the portions of the charge excepted to show that the court submitted the case to the jury upon a theory or theories that were not authorized by the pleadings or the evidence. That the charge of our able and learned brother of the trial bench is open to this criticism is, doubtless, largely due to the vague and indefinite allegations in the plaintiff's petition upon which he rests his right to the relief sought. In the second paragraph of the petition it is alleged, that "said land (the land in controversy) was then purchased from Valentine Kahn [and others] for said sum of $135 by petitioner, and a deed was executed to said land in favor of petitioner, according to petitioner's understanding, and was to be kept in the possession of said Locke until petitioner should pay off said loan which said Locke had procured from said Nelson for petitioner, to purchase said land as above stated." It will be observed that while the plaintiff avers that the deed "was executed to said land in favor of petitioner, according to petitioner's understanding," he neglects and fails to state with whom he had this understanding; and this omission is nowhere, in the course of the petition, supplied. Whether it was with Locke, or with Nelson, or with the vendors of the land, we are left to conjecture. The plaintiff, as we see from the statement of facts, never distinctly alleges that a deed conveying the land to him was ever executed by the vendors, and that it was destroyed, and does not admit in his pleadings that such a deed was ever executed. But after having charged that, "according to his understanding," such a deed was executed, he alleges that Locke's administrator "claims to petitioner that he has been unable to find such a deed;" and he leaves it to the trial court and to this court to surmise as to whether this is to be accepted as an allegation that no such deed had been executed, or that there was a deed, as a part of a fraudulent scheme, as is sought to be set up, but the parties to which are nowhere clearly revealed. Though the petition does complain that the deed executed by Nelson to Locke was a fraud on petitioner, and that the deed from the vendors of the land to Nelson was a fraud on petitioner, the plaintiff concludes his petition, not with a prayer for the cancellation of the deed from the vendors of the land to Nelson, and of Nelson's deed to Locke, but with a prayer for the cancellation of the mortgage

from Locke to Hendricks, and that Locke's administrator be required to make petitioner "good and sufficient titles to said property."

The plaintiff in error in his motion for a new trial, among other grounds, complains of the following portion of the court's charge: "There are really but two main propositions of law in the case. The first is this, that if you believe that the truth of the case is that Allen originally purchased this land as set up by him in his petition, and that he purchased it with money that was borrowed for him by Locke, and that, in order to secure the person from whom that loan was made, the title was taken in such person, and that Allen went into the possession of the land as soon as· it was purchased, claiming it as his own, and that subsequently Nelson himself was repaid for that money, and that then the title was conveyed to Locke for the purpose of indemnifying him and securing him against the security he had stood for, material which had been purchased for the purpose of building a house upon that land, then Allen being in possession of that land, whenever he repaid to Locke and to Nelson the amount of money he had borrowed upon that land, he had a perfect equitable title to that property, which is entitled to be respected and protected in a court of equity." It is contended that this charge was error, because "(1) it was not adapted to either the plaintiff's pleadings or the evidence in the case; (2) plaintiff's case as set forth in his petition was not predicated upon the idea that the title was taken in the person from whom money was borrowed by Locke as security for the loan, and that the title was conveyed to Locke to indemnify him for security he had stood for. Such theory is expressly negatived by the petition, which is predicated on the theory that the title was to be made directly from Kahn and others to plaintiff, and that not only was the making of the title from Kahn and others to Nelson and from Nelson to Locke not a·part of the contract, agreement, or understanding, but, on the contrary, was an actual fraud on the plaintiff; (3) there is no evidence whatever that 'in order to secure the person from whom that loan was made, the title was taken in such person,' nor is there any allegation that could have sustained such evidence; (4) there is no evidence whatever that when Nelson was repaid, 'the title was conveyed to Locke for the purpose of indemnifying him and securing him against the security he had stood for.'"

Exception was also taken to the following charge of the court: "If you believe these facts to be the truth of the case and established by the testimony in the case, and believe it further to be the truth that the time when Hendricks made a loan to Locke, or Locke gave as security for that loan a mortgage on the real estate sued for in this case, that at that time Allen was in possession of said real estate, claiming it as his own, under a contract of purchase from Locke of that real estate, then the equity of Allen, as the party in possession under a contract of purchase, would be superior equity to that of Hendricks." It is complained that this portion of the charge was error, "(1) because there was no evidence whatever that Allen was in possession of the real estate, claiming it as his own, under a contract of purchase from Locke; and (2) because said charge proceeded upon a theory in conflict with the allegations of the plaintiff's petition, in that plaintiff's petition negatived the idea of the purchase of the land by him from Locke."

. These exceptions, each and all, are well taken, especially when we consider that nowhere in the charge was the issue of fraud in the execution of the said deeds to Locke and Nelson even referred to.

The case alleged sounds in fraud; fraud is the essence of it. After alleging, that Locke borrowed money "for petitioner to purchase said land," that the land was then purchased from Kahn and others by petitioner, and "a deed was executed to said land in favor of petitioner, according to petitioner's understanding," and that he discovered that deeds were made from Kahn and others to Nelson, and from Nelson to Locke, the allegation is made, as we have seen before, that said deeds were a fraud on petitioner. But there is no evidence of any contract, agreement, or understanding between Allen and Locke concerning the purchase of that land. If Locke borrowed money for the purchase of the land and was responsible for the repayment thereof, it can hardly have been a fraud on his part to take a deed to it to secure himself, in the absence of a contract or agreement to the contrary. No further discussion is needed to show that the plaintiff's case as stated by him in his petition was not submitted to the jury. It must not be concluded, however, from anything in this decision, that,—whether Locke borrowed the money from Nelson, or Nelson advanced the money to Kahn and others at the time of the purchase of the land, and there was an understanding, either that the deed to the land

through Nelson to Locke was to be made to secure Locke, or that the deed to the land was to be made by the vendors to the plaintiff and to be held by Locke until the purchase-price should be paid by the plaintiff, and there was a further agreement, on account of money advanced by Locke for materials used in buildings on said premises, that the deed was to remain in Locke's· possession until he was reimbursed for such advances, and plaintiff went into possession of the land and remained in possession of it,—he has not such an equitable title in the land, if he has paid the original purchase-price and reimbursed Locke for the advances made for materials, as would enable him, upon proper pleadings, to resist the seizure and sale of the land under the foreclosure proceedings upon the mortgage executed by Locke to Hendricks.

2. Plaintiff in error complains, in one of the grounds of his motion for a new trial, that the court erred in permitting the plaintiff to testify, in substance, that in 1890 he (plaintiff) borrowed $125 from Nelson to pay Kahn and others for the land in controversy; and that he had since repaid that sum to Nelson. This testimony was objected to on the ground that Nelson was dead and the opposite party to the case was a transferee or assignee òf Nelson. Plaintiff in error rests his contention upon the provisions of the Civil Code, §5269, subsection 1: "Where any suit is instituted or defended by a person insane at time of trial, or by an indorsee, assignee, transferee, or by the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the insane or deceased person, as to transactions or communications with such insane or deceased person." The effect of the testimony above referred to, the same relating to a transaction between plaintiff and the deceased Nelson, was to impeach the right of Nelson to convey the property in controversy to Locke. And inasmuch as the administrator of Locke, the assignee or transferee of Nelson, was a party defendant in the case, we think that the court erred in admitting this testimony, over the proper and timely objection of the plaintiff in error. *Hendrick* v. *Daniel,* 119 *Ga.* 358.

*Judgment reversed. Fish, C. J., absent. The other Justices concur.*