## KRAMER *v.* SPRADLIN *et al.*

1. Where a testator bequeathed and devised to his widow a promissory note payable to him, and all his interest in a deed to certain realty, executed by the maker of the note to secure its payment, and in his will expressly authorized his widow to sue on the note if it should not be paid, and to reconvey the land to the grantor in the deed (as provided by statute) in order to have the land sold under a judgment on the note as the property of the defendant, and the executor expressly consented to the legacy and devise, the widow was the assignee or transferee of the title of the testator to the note, and of his interest and rights under the deed; and where an execution issued upon a judgment on the note, obtained by the widow against the maker, was levied upon the land conveyed in the security deed, and a statutory claim to a part of the land was interposed, the maker of the note and security deed was an incompetent witness to testify, on the trial of the issue in the claim case, to transactions and communications between himself and the testator, relative to the note and the deed, and tending to the direct benefit of the witness and to the injury of the plaintiff in fi. fa. The decision in *Austin* v. *Collier*, 112 *Ga.* 247 (37 S. E.

404), in so far as it conflicts with what is here ruled, is, upon review, overruled.

2. Certain testimony objected to was not inadmissible on the sole ground that the witness was incompetent because of the death of the testator of the plaintiff.

No. 965.    FEBRUARY 14, 1919.

Claim.    Before Judge Terrell.    Heard superior court.    March 18, 1918.

*C. E. Roop* and *S. Holderness,* for plaintiff.

*Hall & Jones, Willis Smith,* and *J. L. Smith,* contra.

FISH, C. J.    Kramer made a loan of money to Vaughn, and took from him a promissory note therefor, payable to Kramer, and a deed to described land to secure the debt.    Kramer died, leaving a will whereby he gave to his widow the note and all of his interest in the land conveyed as security for its payment.    The will specifically stated the transaction between the testator and Vaughn, and authorized the widow to sue on the note in the event of its non-payment, and to reconvey the land to Vaughn for the purpose of its sale under the judgment obtained upon the note, according to the statute in such cases (Civil Code, § 6037).    The executor expressly consented in writing to the legacy, both as to the note and the security deed.    The note was not paid, and the widow brought suit thereon against Vaughn, and obtained a judgment. She reconveyed the land to Vaughn by a quitclaim deed, which was duly and properly filed and recorded; and afterward the execution issued upon the judgment was levied upon the land as Vaughn's property.    Spradlin interposed a statutory claim to a specified part of the land; and on the trial of the issue made in the claim case the court permitted Vaughn to testify, that, subsequently to the execution of the security deed to Kramer, Vaughn, for a valuable consideration, sold and conveyed to Spradlin, by a warranty deed, the portion of the land claimed; and that the sale and conveyance were made with the actual knowledge and expressed consent of Kramer, who really advised Vaughn and Spradlin to make the trade, and aided them in carrying it out in the execution of the conveyance.    This testimony was objected to by the plaintiff in execution, on the ground that as to the title to Vaughn's note and to the testator's interest in the security deed, the plaintiff was the assignee and transferee of her deceased husband, Kramer, who in his will gave and bequeathed to her Vaughn's note and all

of the testator's interest in the land held by him at the time of his death under the deed executed to him by Vaughn to secure the payment of the note; and that Vaughn was directly interested in the result of the case, for the reason that he had conveyed to the claimant a part of the land by a warranty deed, and if it should be found subject to the plaintiff's execution Vaughn would then be liable on his warranty to the claimant. A verdict was directed, finding the land claimed not subject to the execution, and the plaintiff excepted.

1. Our statute (Civil Code, § 5858) declares: "1. Where any suit is instituted or defended by a person insane at the time of trial, or by an indorsee, assignee, transferee, or by the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the insane or deceased person, as to transactions or communications with such insane or deceased person, whether such transactions or communications were had by such insane or deceased person with the party testifying or with any other person." And "4. Where a person not a party, but a person interested in the result of the suit, is offered as a witness, he shall not be competent to testify, if as a party to the cause he would for any reason be incompetent." The controlling question in the case is whether Mrs. Kramer, the plaintiff in execution, who is the legatee and devisee, under the will of her husband, of Vaughn's promissory note, and of all the interest of the testator in the deed given to secure the note which the testator held at the time of his death, is the assignee and transferee as to such property, within the meaning of the evidence act above quoted, so as to exclude the testimony of Vaughn, who is interested in the result of the suit, as to transactions and communications he had with the testator.

In *Hendrick* v. *Daniel,* 119 *Ga.* 358 (46 S. E. 438), it was held: "Under Civil Code, § 5269 [C. C. 1910, § 5858], par. 1, in an action of ejectment the opposite party to the grantee of a deed from a deceased person is not competent to testify in his own behalf to conversations and transactions with such deceased person, affecting adversely the title conveyed by the deed; and under par. 5 the agent of such a party is likewise incompetent." We quote liberally from the able opinion rendered by Mr. Justice Candler in that case. He said: "The literal meaning of the word 'endorsee'

is easily ascertained. by reference to its etymology. Endorsement applies to such written entries as may be made on the back of notes, checks, etc., and may transfer title to the paper on which it is made. The literal meaning of the word 'assignment' is much broader. In its most general sense it applies to the transfer of interest in all classes of property, real, personal, or mixed. Bouvier gives as the definition of the verb 'assign,' to make or set over to another, and of 'assignment,' a transfer or making over to another of the whole of any property, real or personal, in possession or in action, or of any estate or right therein; a transfer by writing, as distinguished from one by delivery. Black's Law Dictionary (p. 97) defines the word as 'the act by which one person transfers to another, or causes to vest in that other, the whole of the right, interest, or property which he has in any realty or personalty, in possession or in action, or any share, interest, or subsidiary estate therein. . . . In a narrower sense, the transfer or making over of the estate, right, or title which one has in lands and tenements.' The same authority defines the verb 'assign,' as used in conveyancing, as follows: 'To make or set over to another; to transfer; as to assign property, or some interest therein.' It seems clear that, technically speaking, the word 'assignment' refers to a transfer of interest in land alone, and that to apply it to a transfer of a note or similar paper is to give it a broad, rather than a technical meaning. Literally, it most assuredly covers a conveyance of land by deed. The word 'transfer,' in its literal meaning, is broader than 'assignment,' and all the authorities agree in a definition which in effect covers any act by which the owner of anything delivers or conveys it to another with the intent to pass his rights therein. In like general terms, a transferee is one to whom a transfer is made. Following the former decisions of this court, therefore, and giving to the words 'assignee' and 'transferee,' as used in the code, a literal construction, we are forced to the conclusion that they cover the grantee in a conveyance of land. *'These words are the broadest that could possibly have been used. A literal construction of either necessarily includes a vendee, grantee, or donee. That such was the meaning intended to be given them by the lawmaking power we think can easily be established by an application of any or all of the well-known rules for the construction of statutes.* [Underscoring ours.] The act

of 1889 and the amending act of 1893 are both remedial statutes. The evil sought to be cured was that the living took advantage of the dead, the sane of the insane, by giving testimony the power to contradict which was buried in the tomb or obscured by dethroned reason. By the decision of this court in the case of *Woodson* v. *Jones* [92 *Ga.* 662, 19 S. E. 60], it was brought to the attention of the General Assembly that the act of 1889 failed of its full purpose, and it was accordingly amended by the act of 1893. To use a homely metaphor, by inserting in the law as it stood the word 'endorsee' the legislature healed the particular malady pointed out by the decision in the case cited, and then, to guard against a relapse, or the possibility of a similar attack in the future, it inoculated the patient with the words 'assignee' and 'transferee.' The mischief as it existed prior to the passage of the act of 1889 was plain. *That act did not accomplish its full purpose, and so, in 1893, the General Assembly amended it so as to cover all possible cases where the same mischief threatened, and where estates, real, personal, or mixed, of deceased or insane persons might otherwise be obtained or damaged by allowing parties to suits affecting such estates to testify to communications and transactions with such deceased or insane persons. With the full nature and extent of the evil clearly apparent, we can not believe that the General • Assembly intended to protect the estate of a deceased endorsee of a note against the testimony of the living maker, at the same time allowing it to be wronged by nullifying his warranty deed to a tract of land. On what theory it can be supposed that the General Assembly sought to protect the purchaser of a note and leave unprotected the grantee of a piece of real estate we are at a loss to conceive."* (Italics ours.)

In *Hendricks* v. *Allen,* 128 *Ga.* 181 (57 S. E. 224), the decision in *Hendrick* v. *Daniel,* supra, holding that the grantee in a conveyance of land was an assignee or transferee, was followed. In *Turner* v. *Woodward,* 136 *Ga.* 275 (71 S. E. 418), it was held that the grantee or donee in a deed of gift who was the defendant in the action was an assignee or transferee of the title within the meaning of the Civil Code, § 5858, par. 1, and that the plaintiff was incompetent as a witness to testify to transactions between himself and the deceased grantor or donor of the defendant. In *Hudson* v. *Broughton,* 147 *Ga.* 547 (94 S. E. 1007), it was

held: "On the trial of an action to recover a house and lot, brought by a vendee in a warranty deed against a donee in possession under claim of a parol gift from the same transferor to an undivided half interest in the lot, with valuable improvements made thereon by the donee, and with actual notice to the plaintiff by the donee prior to and at the date of the deed from the vendor to the vendee, where at the time of the trial the vendor and donor was dead, it was not error to refuse to permit the plaintiff and her agent to testify as to alleged conversations and transactions with the vendor relative to the transfer of the house and lot to the plaintiff."

Considering the beneficent purpose of the General Assembly in passing and amending the evidence act as set forth in section 5858 of the Civil Code, and as was so clearly and forcibly expressed by Mr. Justice Candler in *Hendrick* v. *Daniel,* supra, and the ruling in that case and the subsequent cases approving and following it, to the effect that a grantee and a donee in a conveyance of land are assignees and transferees in contemplation of that act, we reach the confident conclusion that a legatee and a devisee are also assignees and transferees within the contemplation of that act; and therefore, in the circumstances of this case, it was error to permit the witness Vaughn, who was interested in the result of the case, to give the testimony objected to, as to transactions and communications between himself and the testator of the plaintiff.

In McMechen *v*. McMechen, 17 W. Va. 683 (41 Am. R. 682), it was held that the devisees of a testator are his assignees within the meaning of a statute of that State, declaring that "A party shall not be examined in his own behalf in respect to any transaction or communications had personally with a deceased person, against parties who are executors, administrators, heirs at law, or next of kin, or assignees of such deceased person, where they have acquired title to the cause of action from or through such deceased person, or have been sued as such executors, administrators, heirs at law, next of kin, or assignees." In the opinion it was said: "It has been held in New York, upon the construction of a statute similar to ours, that the devisees of real estate are the assignees of the testator within the meaning of their statute, and we think properly so; and therefore the devisees of the real estate under the will of Sheperd McMechen are the assignees of said Sheperd

McMechen within the meaning of section 23, chapter 130 of our Code. Buck *v.* Staunton, 51 N. Y. 624; Cornell *v.* Cornell, 12 Hun, 314." In Hayes *v.* Hayes, 45 N. J. Eq. 461 (17 Atl. 634), it was held that the legatee of a debt was an assignee for the purpose of suing thereon. In Joss *v.* Mohn, 55 N. J. L. 407 (26 Atl. 987), an action against devisees to recover a sum of money which the plaintiff claimed to have loaned to their decedent, it was held that the devisees were the representatives of the deceased debtor, and that the plaintiff was incompetent to testify to any transaction with or statement made by the decedent. As to the statute of that State on the subject, the court said: "The import of the statute, . . . as judicially construed, is to exclude any testimony concerning any transaction with or statement by any testator or intestate represented in an action by a party to the action, where either of the parties sue or are sued in a representative capacity, unless the representative offers himself as a witness in his own behalf, and testifies to such transactions or statements" On the subject see 40 Cyc. 2304; 5 C. J. 838, § 4, to the effect that an assignee. is "one to whom rights have been transmitted by particular title, such as a sale, gift, legacy, transfer or cession;" Bouvier's Law Dic. "Assignee." In McAleer *v.* McNamara, 140 Iowa, 112 (117 N. W. 1122), it was held that a mere donee should not be held to be an assignee under the statute of that State in reference to the competency of witnesses. This decision is, however, in conflict with the decisions of this court on our statute, hereinbefore cited. We are aware that a ruling contrary to what we hold in this case was made in Hight *v.* Sackett, 34 N. Y. 447, as to the meaning of the word assignee; but we are not at all impressed with the correctness of that decision.

This court, in *Austin* v. *Collier*, 112 *Ga.* 247 (37 S. E. 434), held that legatees under a will were not indorsees, assignees, or transferees, or personal representatives of the deceased, so as to render the plaintiff, who sued to recover land from them, an incompetent witness as to. transactions and communications between the plaintiff and the testator. Counsel for the plaintiff in the present case have requested that the decision just recited be reviewed and overruled. After mature consideration, we are of the opinion that the decision so rendered was erroneous; and we overrule the same in so far as it conflicts with the ruling here made.

2. The witness, Street, to whose testimony the plaintiff in execution objected, was not incompetent to testify that he purchased from Vaughn, with the consent of Kramer, a portion of the land which Vaughn had conveyed to Kramer in the security deed; it not appearing that the land which Street claimed to have purchased was any part of the land Vaughn sold to Spratlin; it moreover not appearing that the conveyance that Vaughn may have executed to Street contained a warranty of title. Street's testimony was not objected to on the ground that it was irrelevant. It was admitted; but it did not authorize the judge to direct the verdict. The direction of the verdict was error.

> *Judgment reversed.   All the Justices concur.*