No. 3107

Concerning Article XV, House Bill No. 8, Acts
Regular Session 47th Legislature, imposing a
stamp tax upon transfers and deliveries of
shares or certificates of stock, and holding:

1.  That the acquisition by a surviving
wife of an undivided one-half interest in stock
formerly owned by the community, such one-half
interest representing her interest in the com-
munity estate, is not subject to taxation under
the above memtioned Act.

2.  That the acquisition by a surviving
wife, as heir at law of her deceased husband
under the statute of descent and distribution,
of an undivided one-half interest in stock,
representing the husband's interest in the
community, is not subject to taxation under the
above mentioned Act.

3.  That the acquisition by the surviving
wife, as legatee under her husband's will, of
an undivided one-half interest in stock, repre-
senting the husband's interest in the community,
is subject to taxation under the above mention-
ed Act, and the tax is measured by the full num-
ber of shares so transferred.

OFFICE OF THE ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4134
Re: (a) Does a stock transfer tax
accrue under Article XV, House
Bill 8, Acts Regular Session,
47th Legislature (Art. 7047m,

Vernon's Texas Civil Statutes),
upon the issuance of a stock
certificate to a surviving wife
to cover 100 shares of stock
which originally constituted a
part of the community estate of
the deceased husband and said
surviving wife?
(b) If so, is said tax computed
upon 50 shares or upon 100 shares?

Your letter of March 26, 1942, submits for our
opinion the following question which we quote therefrom:

"At the time of the death of Texas resident,
he and his wife owned in community 100 shares in a
domestic corporation. The corporation took up the
original certificate of 100 shares and issued to
the surviving wife a new certificate for the 100
shares. Is such transaction taxable under Article
XV of House Bill 8 of the Regular Session of the
Forty-seventh Legislature? If so, is the tax
payable on 50 shares or on 100 shares?"

The provisions of the Act pertinent to this inquiry
are copied from Section 1, Article 15, as follows:

"There is hereby imposed and levied a tax as
hereinafter provided on all sales, agreements to
sell, or memorandum of sales, and all deliveries
or transfers of shares, or certificates of stock,
or certificates for rights to stock, or certi-
ficates of deposit representing an interest in
or representing certificates made taxable under
this Section in any domestic or foreign asso-
ciation, company, or corporation, or certificates
of interest in any business conducted by trustee
or trustees made after the effective date hereof,
whether made upon or shown by the books of the
association, company, corporation, or trustee, or
by any assignment in blank or by any delivery of any
papers or agreement or memorandum or other evidence
of sale or transfer or order for or agreement to buy,
whether intermediate or final, and whether investing
the holder with the beneficial interest in or
legal title to such stock or other certificate
taxable hereunder, or with the possession or use
thereof for any purpose, or to secure the future
payment of money or the future transfer of any
such stock, or certificate, on each hundred dollars
of face value or fraction thereof, three (3) cents,
except in cases where the shares or certificates are

issued without designated monetary value, in
which case the tax shall be at the rate of three
(3) cents for each and every share. It shall be
the duty of the person or persons making or
effectuating the sale or transfer to procure,
affix, and cancel the stamps and pay the tax
provided by this Article. ... The payment of
such tax shall be denoted by an adhesive stamp
or stamps affixed as follows: In the case of a
sale or transfer, where the evidence of the
transaction is shown only by the books of the
association, company, corporation, or trustee,
the stamp shall be placed upon such books, and it
shall be the duty of the person making or effectu-
ating such sale or transfer to procure and fur-
nish to the association, company, corporation,
or trustee the requisite stamps, and of such
association, company, corporation, or trustee to
affix and cancel the same. Where the transaction
is effected by the delivery or transfer of a
certificate the stamp shall be placed upon the
surrendered certificate and canceled; and in
cases of an agreement to sell, or where the sale
is effected by delivery of the certificate assigned
in blank, there shall be made and delivered by the
seller to the buyer, a bill or memorandum of such
sale, to which the stamp provided for by this Arti-
cle shall be affixed and canceled. ..."

Although transfers of stock, certificates of
stock, etc., by operation of law, are not expressly made
exempt by the Stock Transfer Tax Act, we think such trans-
fers are not the taxable event or transaction designed to
be reached by the above quoted tax levy and are therefore
excluded, by necessary implication, from the language
used. The tax is upon "all sales, agreements to sell, or
memoranda of sales, and all deliveries or transfers of
shares or certificates of stock" and it is "the duty of the
person or persons making or effectuating the sale or
transfer...to procure, affix and cancel the stamps and
pay the tax provided by this Article." We think this
language contemplates and presupposes, as a condition to
taxability, only changes in legal or beneficial title
effected by the affirmative acts of a party or parties
thereto.

This conclusion finds persuasive support in
Federal and state authorities, construing stock transfer

tax levies substantially identical to the above quoted
one. We particularly advert to decisions of the inter-
mediate and final appellate courts of New York, constru-
ing the Stock Transfer Tax Act of that state, from which
decisions must consequently be deemed to have been within
the legislative cognizance at the time of the passage
of the instant act. In the case of Phelps-Stokes Estates
Inc. v. Nixon, 118 N.E. 241, the court, in holding that
a vendor's election to pass title and sue for the purchase
price, upon refusal of purchaser to complete his agreement
to purchase, was not a "transfer" contemplated by the
statute, made the following pertinent comments, after
quoting the provisions of the New York Act corresponding
to the ones hereinabove quoted from the Texas Act:

> "These sections contemplate something more
> than a theoretical change of title. They con-
> template some physical act; the delivery of a
> certificate; the execution and delivery of a bill
> of sale; an entry upon the books of the corpora-
> tion. It is such a transfer as is referred to
> in section 162 of the Personal Property Law. A
> transfer is defined in the Century Dictionary as:

> "'The conveyance of the right, title or proper-
> ty, etiher real or personal, from one person to
> another, either by sale, by gift or otherwise.'

> "In Bouvier it is said that a transfer is:

> "'The act by which the owner of a thing
> delivered it to another person with the intent
> of passing the rights which he has in the latter.'

> "In Hendrick v. Daniel, 119 Ga. 358-361,
> 46 S.E. 438, a transfer 'covers any act by which
> the owner of anything delivers or conveys it to
> another with the intent to pass his rights' to the
> letter. In Pearre v. Hawkins, 62 Tex. 434, a
> transfer is said to be 'An Act or transaction by
> which the property of one person is by him vested in
> another.' In People ex rel Hatch v. Reardon, 184
> N.Y. 431, 77 N.E. 970, 8 L.R.A. (N.S.) 314, 112
> Am. St. Rep. 628, 6 Ann. Cas. 515, the constitu-
> tionality of the Stock Transfer Act was in question.
> There is no definition given as to the meaning of the
> word 'transfer'. But the language of Judge Vann's
> opinion seems to involve the idea that a transfer

within the meaning of the statute necessitates some act, such as a sale on the part of the transferror.

"In People v. Duffy-McInnerney Co., 122 app. Div. 336, 337, 106 N.W. Supp. 878, the question arose whether the issue by a corporation of its original shares was a transfer. The Appellate Division of the Third Department said that the statute was to be strictly construed, and that a sale or transfer cannot, except by forced interpretation, be held to include an original issue of certificates. 'Until those certificates are once issued they cannot be made the subject of such sale or transfer as to bring them within the provisions of the act requiring them to pay the tax.' In the opinions of the Attorney General for September 30, 1914, it was said that where, when trustees named in a will, the title to the trust property, including the stock, passes to and vests in the substituted trustees, and that such a passing of title is not a transfer within the meaning of the act. 'The title to the stock immediately vests in the substituted trustees, not by virtue of any sale or transfer within the ordinary accepted meaning of these terms, but by operation of law.'"

In Electric Bond & Share Company v. State, 293 N.Y.S. 175, affirmed 274 N.Y. 625, 10 N.E. (2d) 583 (1937), it was held that transfer to new corporation, created by consolidation under statute, of shares of stock owned by consolidating corporations, was not subject to the stock transfer tax imposed upon "sale or transfers" of stock, since the transfer occurred by operation of law, and those terms relate to sales or transfers within their ordinarily accepted meaning. To the same effect is the case of Rockefeller Foundation v. State, 258 N.Y.S. 812, even though new certificates of stock were issued by the corporation, as in the instant factual situation. With reference to the taxability of such certificates, the court said:

"The certificates of stock are in themselves only evidence of the transfer of title. The title passes even if the certificates are never issued. It was not necessary to issue these certificates to pass title herein. The title had already

passed 'by operation of law.' The consolidation had been perfected by order of the Supreme Court. The Supreme Court had decided the question of consolidation in favor of consolidation.

"All of the necessary steps had been taken, and, by virtue of the provisions of sections 50 and 51 of Article 7 of the Membership Corporation Law, the claimant 'by operation of law' had become vested with the title to the stock owned by the consolidating corporations. The issuance of new certificates was not a transfer, but was only a step creating the evidence."

Likewise, transfers "resulting wholly by operation of law" have consistently been held to be exempt from the Federal Stock Transfer Tax Act. See Treasury Regulation 71, Article 34, Subdivision (q).

Consequently, it is our opinion that if the changes in title occurring in the instant situation are of the type often denominated "transfers by operation of law", such changes are not taxable.

Although the phrase "transfer by operation of law" is often used, it is but seldom defined. Thus, but one general definition of this phrase is given in Words & Phrases, viz: "Cases where the title or right to property vests in a person, not by his own act or agreement, but by the operation of law, as in the case of the devolution of title upon an administrator or where the estate of an intestate is cast upon the heir." 5 Words & Phrases 1093 (quoting from Burke v. Backus, 51 Minn. 174, 53 N.W. 458). In Terminals & Transportation Corporation v. State, 8 N.Y.S. (2d) 282, 284 (Ct. Cl. 1938) affirmed 257 App. Div. 1028, 14 N.Y.S. (2d) 493 (1939), the court said that such a transfer is one "effected by some positive legal rule or enactment."

In the instant situation the wife received an undivided one-half interest in the stock as her portion of the community. Prior to the dissolution of the community estate of husband and wife by death or divorce, the beneficial title of each to community property is identical and equal. Most usually the legal title, for the sake of convenience or convention, is in the husband, who, in law, holds in trust for himself and for his wife, the latter having an equitable

title. But regardless of in whose name the legal title
rests, the equitable title of the spouses is equal, although
there can be no partition of their interests until dissolu-
tion of the community estate by death or divorce. 23 Tex.
Jur. 101-103. Upon the termination of the community estate
by the death of the husband and the consequent dissolution
of the marriage, the moiety of the surviving wife in the
community estate is converted into and becomes the separate
property of the wife. 23 Tex. Jur. 102. Such a change is
effected solely by the provisions of Article 2578, Vernon's
Revised Civil Statutes of Texas (1925), and can in no way
be either altered or aided by any affirmative acts of the
husband; as such, it is a change effected by law and is not
subject to the stock transfer tax. This conclusion is in
accord with that reached by the Federal Bureau of Internal
Revenue in ascertaining the taxability, under the Federal
Stock Transfer Tex Act, of indentical changes occurring
under the Texas, Louisiana and California community pro-
perty statutes. See 1940 C.C.H. Federal Tax Service,
¶ ¶ 6384 (Texas), 6161 (California), 6064 (Louisiana).

With reference to the remaining undivided
one-half interest in the stock in question, it must be
assumed from the factual situation presented, that the
surviving wife received title to and became the owner of
the same either as legatee, under the testamentary disposi-
tion of the husband, or as distributee under the statutes of
descent and distribution. In either event title to this
stock, which constituted a part of the community estate of
the deceased husband, vested in the surviving wife rather
than in the executor or administrator of the estate of said
deceased husband, according to the disposition required by
Article 3314, Vernon's Texas Civil Statutes, providing, in
part, as follows:

"When a person dies, leaving a lawful will,
all of his estate devised or bequeathed by such
will, shall vest immediately in the devisees or
legatees; and all the estate of such person, not
devised or bequeathed, shall vest immediately in
his heirs at law; subject however, to the payment
of the debts of the testatory or intestate, except
such as may be exempted by law; and whenever a
person dies intestate, all of his estate shall
vest immediately in his heirs at law, but with the
exceptions aforesaid shall still be liable and
subject in their hands to the payment of the debts
of the intestate; but upon the issuance of letters

testamentary or of administration upon any such estate, the executor or administrator shall have the right to the possession of the estate as it existed at the death of the testator or intestate, with the exception aforesaid; and he shall recover possession of and hold such estate in trust to be disposed of in accordance with law."

It has been held that the legal consequence of the above statute is to cast the legal title to property, both real and personal, directly upon the heirs or distributees, in cases of intestacy, and upon the devisees and legatees under a last will and testament; subject in each case to the payment of the debts of the deceased. It has also been held that administration is not necessary to the vesting of title, but that title vests immediately upon the death of the deceased, subject to payment of debts, family allowance, funeral expenses and expenses of administration, if and only if an administration is deemed necessary. Morrell v. Hamlett, 24 S.W. (2d) 531, Richardson v. Vaughan, (Sup, Ct.) 23 S.W. 640; Lean v. Leal, 291 S.W. 340, 13 Tex. Jur. 595, 15 Tex. Jur. 172-173.

Article 2578, Vernon's Revised Civil Statutes (1925), provides that the entire community passes to the surviving spouse, in case of intestacy, if there be no children or their descendants. When this provision is coupled with the provisions of Article 3314, supra, it is seen that if the husband's undivided one-half interest in the stock in question passed by intestacy, the wife obtained title thereto solely through the combined effect of these two articles. Here too our conclusion is in accord with that reached by the Federal and New York officials in construing their respective statutes. See C.C.H. Federal Tax Service, ¶ ¶ 6384 (Texas intestacy law); 6162 (California intestacy law); Opinion of the Tax Commission of New York, August 21, 1940 (Texas intestacy law).

However, if the husband's undivided one-half interest passed to the wife, not by intestacy, but rather by virtue of a testamentary instrument executed by the husband, the transfer was not effected by law. Although Article 3314 would operate in this situation to vest title in the wife immediately upon the death of the husband, this article would not be the sole operative factor involved in the transfer, since an affirmative act of the husband, the execution of the will, would have been necessary to call the statute into operation and such a transfer would have

been effected through the combined effect of the statute
and the affirmative action of the husband. As was said by
the Bureau of Internal Revenue with reference to the
Federal statute, "where stock is disposed of by general or
specific provisions in the will of a decedent, the transfer
of legal title thereto does not result wholly by operation
of law but is brought about through an act of the parties
and such transfer to the beneficiaries is subject to the
stamp tax. ..." 1940 C.C.H. Federal Tax Service, ¶ 6162.
Moreover, in this event the measure of the tax is the full
number of shares transferred, since prior to the husband's
death neither spouse owned a share outright, but each had
a one-half undivided interest in each share. See, in accord
1940 C.C.H Federal Tax Service, ¶ 6064 (Louisiana community
property).

In our opinion No. 0-4122 we held that a stock
transfer tax accrues, under this Act, upon a transfer of stock
from an administrator to the heirs at law; and in our opin-
ion No. 0-3520 we ruled that, although such a tax is not
collectible on transfers of stock from a decedent to the
administrator or executor of the estate, the tax is col-
lectible if such personal representative is also a legatee
or distributee and receives shares of stock as such. These
opinions resulted from a regrettable failure properly to
appreciate the full effect of the provisions relating to
the immediate vesting of title to stock passing to heirs or
distributees under Article 3314, supra, and from a mistaken
belief that a transfer of title from the decedent to the
administrator and thence from the latter to the heirs or
distributees is necessary under Texas law. Accordingly we
overruled our opinion No. 0-4122 in its entirety and our
opinion No. 0-3520 in so far as it is inconsistent with
this opinion. The portion of opinion No.0-3520 holding that
the transfer of stock from a decedent to his executor or
administrator is not taxable is correct in its result, but
is based on untenable premises. No tax would accrue here
because no transfer, by operation of law or otherwise,
would occur. Upon the death of the owner, his stock, eo
instanti, becomes the property of his heirs or legatees.
If stock certificates should for some reason issue to the
executor or administrator, no tax would accrue because,
in fact, the representative received neither legal nor
equitable title from the seeming transfer.

In our opinion No. 0-4312, we held, inter alia,
that if a husband validly conveyed 1,000 shares of stock,
forming a part of his separate property, to the community,
a stock transfer tax is payable only on 500 shares, on the

theory that the wife receives such shares while the husband retains the remainder. This portion of Opinion 0-4312 overlooked that fact that neither spouse owns an entire share during coverture since each possesses but an undivided one-half interest in the total shares owned by the community. Since this portion of opinion No. 0-4312 is directly opposed to the opinion herein expressed and is contrary to the conclusion reached by the Federal tax officials in 1940 C.C.H. Federal Tax Service, ¶ 6064, the opinion is overruled in so far as it is inconsistent with this opinion.

Consequently, you are respectfully advised that:

(a) The acquisition by the surviving wife of an undivided one-half interest in the stock, representing her interest in the community estate, is not subject to taxation under the Texas Stock Transfer Tax Act.

(b) The acquisition by the surviving wife, as heir at law of her deceased husband under the statute of descent and distribution, of an undivided one-half interest in the stock, representing the husband's interest in the community, is not subject to taxation under the above mentioned Act.

(c) The acquisition by the surviving wife, as legatee under her husband's will, of an undivided one-half interest in the stock, representing the husband's interest in the community, is subject to taxation under the above mentioned Act, and the tax is measured by the full number of shares so transferred.

Trusting that the foregoing fully answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By
R. Dean Moorhead
Assistant

RDM:GO/og

This opinion has been considered in conference, approved and ordered recorded. Sep. 4, 1942.
s/Gerald C. Mann
Gerald C. Mann
Attorney General of Texas