CREDILLE, administratrix, *v.* CREDILLE *et al.*

1. Where one issue was whether a decedent had testamentary capacity, and a witness had testified that he lived not far from the decedent, and went to his house often after the latter had been paralyzed; that the decedent was entirely helpless when the witness saw him; that he asked the time of night every four or five minutes; that his speech was a little affected, and his tongue seemed to be a little affected in talking: this was a sufficient foundation on which the witness might express his opinion as to whether the decedent had capacity to talk and to dictate a will, testimony having been introduced to show that the alleged will was executed after the decedent had been stricken with paralysis, and there being some evidence to the effect that he dictated it.

2. The various letters the exclusion of which from evidence formed the basis of complaint in several of the grounds of the motion for a new trial were properly rejected.

3. The charges to which exceptions were taken, on the ground that they were not authorized by the evidence, were not subject to that criticism.

4. The verdict was authorized by the evidence, and there was no error in overruling the motion for a new trial.

Submitted January 10,—Decided July 15, 1908.

Probate of will. Before Judge Lewis. Greene superior court. June 3, 1907.

*Samuel H. Sibley* and *Park & Park,* for plaintiff in error.
*James Davison,* contra.

LUMPKIN, J. A paper purporting to be the will of Reuben A. Credille, deceased, was probated in common form. Subsequently a petition was filed by four of the children of the testator, to set aside and cancel the will. The case was appealed to the superior court, where a verdict was found in favor of the caveators and setting aside the will. A motion for a new trial was overruled, and the case was brought to this court, where the judgment was reversed, because of an error in the charge of the court. 123 *Ga.* 673 (51 S. E. 628, 107 Am. St. R. 157). When the case was again tried, a similar verdict was again found by the jury. A motion for a new trial was made and overruled, and the losing party again excepted.

1. One ground of the motion for a new trial was that the court erred in admitting in evidence the answer of a witness to the following question, "Did he [the decedent] have capacity to talk and to dictate a will?" To this the witness answered, "I don't think he did." The objection was that this evidence was irrelevant, for the reason that the witness, not being an expert, had not given sufficient facts on which to base an opinion. The witness had stated, that he lived about two and a half miles from Reuben Credille; that he went over to the home of the latter often after he (Credille) was paralyzed—pretty soon afterwards; that Credille was entirely helpless when the witness was there; that every four or five minutes he would want to know what time of night it was; that his speech was a little affected, and his tongue seemed to be a little affected in talking. The witness was then asked the question and gave the answer to which objection was made. Where the question is one of opinion, a non-expert witness may state the facts on which he bases it, and then state to the jury his opinion thus founded. It should appear that the opinion given is thus based, and what the facts were on which the witness predicated it. Cause and effect may be an inevitable sequence; but it does not follow that all sequence implies cause and effect. A witness may state that he has seen a man eating dinner, and he may also state afterwards that in his opinion the man was crazy; but this does not necessarily mean that the opinion of insanity was formed because the man ate dinner. He may have had many other reasons

for so thinking, which were entirely unknown to the jury. Where it is sought to have a non-expert witness give his opinion formed from facts or observation, the proper practice is to let the witness testify to the facts and then state to the jury his opinion based upon those facts. In this manner the jury can determine what weight ought to be given to the opinion. If they are not informed as to the basis, they have no means for determining the propriety of drawing such a conclusion from the premises on which it rests. In the illustration given above, if the witness should state to the jury that he thought a person crazy because he ate dinner, the jury would probably give but little weight to his opinion thus formed; while in fact the opinion may have rested upon other facts entirely disconnected from the eating of the dinner, and which might have given much weight to the opinion, if placed before the jury. *Welch* v. *Stipe*, 95 *Ga.* 762 (22 S. E. 670).

It will be observed that the objection here made was not that the opinion did not appear to be predicated upon the facts stated by the witness, but that those facts were not sufficient to authorize an opinion to be formed: The objection made was properly overruled. The weight to be given to the opinion was for the jury. The witness lived in the neighborhood. The alleged testator was stricken with paralysis before the will was made. Some evidence was introduced to show that he dictated it. Want of testamentary capacity, fraud, and undue influence were involved in the case, as well as whether the paper propounded was in fact the will as executed. This witness saw the testator often shortly after the latter was paralyzed, and stated his condition as to helplessness, the effect on his speech, and his continuous inquiry as to the time. This was sufficient to furnish a basis for the witness to express an opinion as to whether the testator had capacity to talk and to dictate a will or not.

2. Several of the grounds of the motion for a new trial complained that the court excluded from evidence certain letters. One of these was from the attorney of the caveators to a person whom he desired to have question one of the witnesses to the will. In the letter it was stated what were the points of inquiry, what suspicions the attorney had on the subject, and what he desired the person addressed to do in the way of getting information. It was also stated that the writer would compensate such person for his

services. There was nothing in the letter suggesting any effort to influence the witness or to use any improper means to affect his testimony, though it does indicate a lack of confidence in him, and a necessity for approaching him cautiously in order to ascertain the truth from him. We see no reason why this letter should have been placed before the jury, or how it would have thrown any light upon the issues involved.

The court also ruled out several letters from some of the caveators to the executor named in the will, who had originally propounded it, and who, having died, was succeeded by an administrator. These letters were written by two of the sons of the testator to their brother, who was the executor named in the will, and also a legatee together with his wife and children. In our opinion, none of these letters furnished any legitimate evidence in the case. They were such letters as brothers disinclined to have a family quarrel and to indulge in litigation with their brother might have written. They expressed regrets at the danger of those undesirable results and their opinions that family quarrels were unfortunate and should be avoided if possible. It was urged that they "ratified the will." But we are unable to see that they had any such effect. Certainly far the greater part of their contents was entirely inadmissible, and if there were any stray sentences which furnished competent evidence, these were not specially offered or pointed out. One of the brothers stated that he had not authorized another brother to bring a lawsuit for him about the matter; that he was bitterly opposed to having any lawsuit, and was willing to any kind of settlement outside of the law, as he thought it a shame "for a family to go to law with each other." The last of these letters bore date on the same day when the petition which commenced this litigation was filed. We do not perceive how the reluctance of the writer to litigate with his brother, or even an expression of willingness to yield something, if necessary, to reach a proper adjustment, furnished competent evidence as to the testamentary capacity of the decedent, or the manner in which his will was made. These letters do not appear to have been offered for the purpose of impeachment, nor does any foundation seem to have been laid for that purpose. We can not say that the presiding judge erred in excluding them.

3. Exception was taken to certain charges on the subject of

fraud, undue influence, and the like, on the ground that they were not authorized by the evidence. A comparison of these charges with the evidence will show that the objection was not well taken. Another ground of the motion for a new trial complained of a charge which in substance informed the jury that the issues were to be determined by them, and that the burden was on the caveators to show that the will was not a valid will, or was not the will of the testator for some valid reason set forth in the objections filed thereto. Objection was made to this charge, on the ground that it submitted to the jury issues as to which there was no evidence. We do not think it was subject to this assignment of error.

4. It would be unprofitable to set forth the voluminous evidence in this case in detail, in order to show that there was enough to authorize the verdict. It being sufficient, and the presiding judge having approved the second verdict finding against the alleged will, this court will not interfere.

*Judgment affirmed. All the Justices concur.*