RENITZ, administrator, *v.* WILLIAMSON; *et vice versa.*

1. There was no error in overruling the demurrers to the petition as amended.

2. In a suit by the administrator of S. against W., the transferee of S., to compel specific performance of a contract to convey land, the heirs at law of S., parties interested in the result of the suit, are not incompetent to testify in favor of the plaintiff and against the defendant as to transactions between W. and S., under subsections 1 and 4 of section 5858 of the Civil Code.

16

3. A transfer of a bond for title to land, absolute in form, may be shown to have been made for the purpose of securing a loan, where the transferor retains the possession of the land.

4. The evidence did not demand a verdict for the defendant, and the court erred in directing a verdict for him.

Nos. 1061, 1090. JULY 17, 1919. REHEARING DENIED JULY 28, 1919.

Equitable petition. Before Judge Mathews. Bibb superior court. May 2, 1918.

This was an action in the nature of a suit for specific performance. The petition was several times amended; and the defendant demurred generally and specially, and his demurrers were overruled. At the conclusion of the evidence the court directed a verdict for the defendant. To this direction the plaintiff excepted. The defendant sued out a cross-bill of exceptions, assigning error upon the judgment, in overruling the demurrers and in allowing the amendments, and upon the ruling of the court in admitting evidence.

The petition as amended alleged in substance that in July, 1905, Julia E. Stevens purchased from one Bazemore 100 acres of land in Bibb county, and went into the immediate possession thereof. She remained in possession until her death, which occurred in 1909 or 1910. Thereafter her heirs at law (the husband and several children) continued in the possession until the end of the year 1912. She agreed to pay Bazemore 20,000 pounds of lint-cotton, valued at $2,000, payable through a series of years. She did not make a cash payment at the time of her purchase, but accepted a bond for title from Bazemore, conditioned to convey to her title to the land upon the payment of the purchase-price. Subsequently to her purchase she conveyed to Bazemore, in consideration of the extension of one or more of the purchase-money notes, 100 acres of land owned by her in Lincoln county. While Mrs. Stevens was in possession under her bond for title from Bazemore, Bazemore agreed with Mrs. Stevens to accept $1600 in full settlement of the purchase-price. Williamson, a brother-in-law of Miles A. Stevens, the husband of Julia E. Stevens, agreed to lend Mrs. Stevens the $1600 without interest, provided Mrs. Stevens would transfer to him her bond for title from Bazemore. It was contemplated that the money advanced by Williamson with which to pay Bazemore should be repaid from the proceeds of the sale of the land, and that Mrs. Stevens, or Miles A. Stevens, her husband, should sell the land when

he could get $3,500 therefor, and repay Williamson. After the death of Mrs. Stevens, and about December, 1912, Miles A. Stevens and his children moved away from the land, but without any intention to abandon it. Before the heirs at law of Mrs. Stevens could find a tenant for the land, Williamson, without right or authority, took possession thereof. Before the death of Julia E. Stevens, a purchaser was found who was willing to pay $3,500 for the land, but Williamson advised against the sale of the land at that price. Subsequently other purchasers were found who were willing to give more than $3,500 for the land, but in each instance Williamson advised Miles A. Stevens to hold the land for a still higher price. Finally, Williamson refused to permit a sale, and repudiated his agreement with Mrs. Stevens, although the land had reached the value of $100 per acre. Williamson had enjoyed the rents of the land, of the yearly value of $500, since the beginning of the year 1913. In addition, he had cut and sold approximately eighty-five cords of wood from the land, of the value of $750. The rents, issues, and profits of the land, since Williamson took possession of it, were sufficient to pay Williamson the amount of money paid by him to Bazemore. In 1916 Miles A. Stevens was appointed administrator on the estate of Mrs. Julia E. Stevens, and as administrator brought this suit against Williamson in October, 1916. The prayers of the petition were, that the court decree that the status between plaintiff and defendant is that of debtor and creditor; that the defendant holds not the absolute title to the premises, but holds the same as security for a debt; that an accounting be had between the parties; that the jury find whether or not the debt has been discharged by the rents, issues, and profits received by the defendant, and, if the profits equal or exceed the amount of the debt, the title be decreed to be in the plaintiff as administrator as aforesaid; that if the jury should find that the rents, issues, and profits are not sufficient to discharge the debt, they find and declare how much is due on said debt, and that thereupon the court decree that the title to said land is held by the defendant only as security for the balance due; that the land be sold, and out of the proceeds the defendant be paid such balance due him, if any, and the balance, after deducting the cost of court, be paid to the plaintiff; that the court so mold its decree upon the findings of the jury as to do substantial justice between the parties; and for general relief.

The grounds of the defendant's demurrer were: The petition sets forth no cause of action; the petition affirmatively shows that the plaintiff has neither title to the land sued for nor the right to the possession of the same; that the plaintiff is not entitled to any of the relief sought, and that certain designated allegations of the petition are immaterial and irrelevant. In his answer the defendant admitted the purchase of the land from Bazemore by Mrs. Julia E. Stevens as alleged, the terms of the purchase, the fact of the transfer by her of her bond for title to him, the payment of the purchase-money by him to Bazemore, and the execution by Bazemore to the defendant of a warranty deed to the land in question. He also admitted that he had received the rents, issues and profits of the land since January 1, 1913, but averred that the same were of the yearly value of not more than fifty dollars; he denied that he had taken from the land eighty-five cords of wood of the value as alleged by the plaintiff. He also denied that he had taken possession of the place in 1913 without right or authority, but averred that the plaintiff had surrendered the possession to him because the plaintiff was unable to pay the amount due the defendant. The defendant also pleaded that he had paid the taxes upon the land since the date of the transfer of the bond for title by Mrs. Julia E. Stevens to him, and had made permanent improvements upon the land of the value of more than $1400.

*J. F. Urquhart, Hall & Grice,* and *C. J. Bloch,* for plaintiff.

*Ryals & Anderson* and *B. S. Deaver,* for defendant.

GEORGE, J. (After stating the foregoing facts.)

1. The assignments of error in both the main and the cross-bill of exceptions will be considered together. We are of the opinion that the petition set forth a cause of action, and that the court did not err in overruling the general demurrer. In so far as the grounds of special demurrer were meritorious, they were met by amendment. *Polhill* v. *Brown,* 84 *Ga.* 338 (10 S. E. 921); *Wells* v. *Kemme,* 145 Ga. 17 (88 S. E. 562); *McNair* v. *Brown,* 147 *Ga.* 161 (93 S. E. 289).

2. The court permitted Miles A. Stevens and four daughters of Mrs. Julia E. Stevens to testify to transactions and conversations between Mrs. Stevens and the defendant Williamson. The defendant objected to this testimony, upon the ground that the witnesses were incompetent to testify to any transaction or communication

had by Mrs. Stevens in her lifetime with the parties testifying or with any other person, Mrs. Stevens' transferee being the party defendant, and the witnesses themselves, though not parties to the action, being directly interested in the result of the suit as heirs at law of Mrs. Stevens, who died without leaving debts. Subsection 1 of section 5858 of the Civil Code provides: "Where any suit is instituted or defended by a person insane at the time of trial, or by an indorsee, assignee, transferee, or by the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the insane or deceased person, as to transactions or communications with such insane or deceased person, whether such transactions or communications were had by such insane or deceased person with the party testifying, or with any other person." Subsection 4 of the same section provides: "Where a person not a party, but a person interested in the result of the suit, is offered as a witness, he shall not be competent to testify, if as a party to the cause he would for any cause be incompetent." The plaintiff in the cross-bill of exceptions does not insist that the witnesses were incompetent and the evidence inadmissible because the suit was instituted by the personal representative of Mrs. Stevens. His exact contention is that the suit stands as if brought by the husband and children of Mrs. Stevens, the heirs at law, against the transferee of their intestate. We do not think this evidence was inadmissible. The reason, spirit, and intention of the statute is, as has been many times observed, that when one of the parties to the contract is dead and can not give his version of the contract or transaction, the other party thereto should not be admitted to testify in his own favor against the interest of the deceased party. This evidence is not within the strict letter of the statute, nor is it within the reason and spirit of the statute. The transferee is in life, and may answer the evidence of the heirs at law of the transferor. The witnesses merely testified to statements made by Mr. Williamson to Mrs. Stevens. The witnesses were offered by the personal representative of Mrs. Stevens; they did not testify against the deceased transferor, or against the interest of the deceased transferor. Subsection 6 of section 5858 of the Civil Code is as follows: "In all cases where the personal representative of the deceased or insane party has introduced a witness interested in the event of a suit, who has testified as to transactions

or communications on the part of the surviving agent or party with a deceased or insane party or agent, the surviving party or his agent may be examined in reference to such facts testified to by said witness." The provisions of this subsection tend to sustain the view that the evidence objected to was admissible. Nothing in *Hendrick* v. *Daniel,* 119 *Ga.* 358 (46 S. E. 438)., *Hendricks* v. *Allen,* 128 *Ga.* 181(2), 186 (57 S. E. 224), *Turner* v. *Woodward,* 136 *Ga.* 275 (71 S. E. 418), or *Hudson* v. *Broughton,* 147 *Ga.* 547 (94 S. E. 1007), is in conflict with the ruling here made.

3. At the conclusion of the evidence the defendant moved to rule out certain evidence tending to show that the transfer of the bond for title by Mrs. Stevens to Williamson was not, as by its terms it purported to be, an absolute and unconditional transfer. The court overruled this motion. The defendant assigns error upon this ruling, and contends that the transfer, being absolute on its face, could not be shown by parol evidence to be a conditional transfer made for the purpose of securing a loan, the defendant being in possession of the land for some years prior to the bringing of the suit. A deed absolute in form may be shown to have been made to secure a debt, where the maker remains in possession of the land conveyed. Civil Code, § 3258; *Mercer* v. *Morgan,* 136 *Ga.* 632 (71 S. E. 1075). If the jury should accept the plaintiff's evidence as the truth of the case, Mrs. Stevens remained in possession of the property until her death, and thereafter her heirs at law continued in possession and never surrendered the possession to the defendant. The possession of the defendant, wrongfully acquired, will not prevent the administrator of Mrs. Stevens, rightfully entitled to the possession, from showing by parol that the transfer of the bond for title was made merely to secure a loan of money. See *Lowe* v. *Findley,* 141 *Ga.* 380 (81 S. E. 230).

4. Did the court err in directing a verdict for the defendant? This brings us to a brief consideration of the evidence. On the direct examination the testimony of Miles A. Stevens, the plaintiff, tended to sustain the material allegations of the petition. On cross-examination, it is true, he testified, "If I never paid Williamson back, the land was to be his; and if I did pay him back, the place was to belong to Mrs. Stevens." In other respects the testimony of the plaintiff on cross-examination was vague and indefinite, and tended to show a mere optional agreement on the part of

Mrs. Stevens to redeem the land. His testimony alone, considered as a whole, would make at best a doubtful case for recovery. However, the testimony of the four daughters of Mrs. Stevens was positive and direct to the effect that Mr. Williamson agreed to advance the money and stand in the place of the original vendor, Bazemore. The defendant himself testified: "I was to take up these papers [referring to the notes given by Mrs. Stevens to Bazemore] and pay for the land, and Mr. Stevens was to pay me; and if he did not, the land was to be mine. . . Mr. Stevens was to repay me by redeeming that contract as specified in this note [referring again to the notes given by Mrs. Stevens to Bazemore]; he never paid a penny on these notes." Mrs. Williamson, the wife of the defendant, was sworn in his behalf, and she testified: "Mr. Stevens was to pay Mr. Williamson back what he paid out. They were to buy the place from Mr. Williamson instead of Mr. Bazemore. I knew Mr. Williamson was paying the $1600, because Mr. Bazemore was willing to knock off $400. My husband held the bond for title because he paid the $1600, and he was to hold it until they paid him back, and then he was to give them the land. . . Mr. Williamson bought the place and he was to hold it until they redeemed it, and of course he expected interest on the money. . . My understanding was that Mr. Stevens was to pay Mr. Williamson the same for the place he was to pay Bazemore." Aside from the oral testimony, the defendant, after the transfer of the bond for title by Mrs. Stevens to him, paid $1600 to Bazemore and accepted Bazemore's deed to the land. At the time of the payment of the money by the defendant and the execution of the deed by Bazemore to the defendant, Bazemore transferred the purchase-money notes given by Mrs. Stevens to him; and the defendant testified, "I bought the contract Stevens made with Bazemore. I did not tender the notes or bond when I told Stevens to pay for the land" (referring to a demand which he made upon Stevens). Whether the defendant held the notes of Mrs. Stevens at the time of the trial does not clearly appear. The notes were transferred to the defendant, and were introduced in evidence by the plaintiff. Whether the evidence for the plaintiff is too vague and uncertain to show a definite and specific agreement on the part of the defendant to accept the money actually advanced by him, without interest, and upon dates other than those specified in the notes given

by Mrs. Stevens to Bazemore, or whether this agreement, if made, was a mere nudum pactum, is not necessarily for decision in the present case. At least, in the respect just above indicated, the plaintiff's evidence made an issue for the jury. "Where there is no conflict in the evidence, and that introduced with all reasonable deductions or inferences therefrom demands a particular verdict, the court may direct the jury to find for the party entitled thereto." Civil Code, § 5926. As indicated above, the evidence would have authorized a verdict for the plaintiff. From the statement of facts it will be seen that the prayers of the petition are ample.

From the foregoing it follows that the judgment on the main bill of exceptions will be *reversed* and the judgment on the cross-bill of exceptions *affirmed*. *All the Justices concur.*