## WINKLES *et al.* v. DRAKE *et al.; et vice versa.*

1. Under the evidence as set out in the first division of the opinion, the court was authorized to find that the attorney who drafted the deed was not the agent or attorney of the plaintiff, the grantee, but was the

Appeal and Error, 3 C. J. p. 818, n. 23; p. 1370, n. 33; 4 C. J. p. 649, n. 36; p. 650, n. 37.

Deeds, 18 C. J. p. 221, n. 75; p. 434, n. 85.

Evidence, 22 C. J. p. 164, n. 75; p. 518, n. 65; p. 525, n. 97; p. 528, n. 25.

New Trial, 29 Cyc. p. 771, n. 83; p. 942, n. 95; p. 947, n. 9.

Witnesses, 40 Cyc. p. 2285, n. 86; p. 2299, n. 99; p. 2765, n. 19.

attorney of the grantor, who was dead at the time of the suit; and did not err in admitting the testimony of the attorney over objection that he was incompetent to testify under Civil Code (1910), § 5858 (5). Nor was it error to admit the evidence over the objection that the deed was not accounted for, and no proof had been made as to its existence.

2. Where evidence is objected to en bloc certain portions of which are admissible, and portions are not, a complaint of the admission of the evidence as a whole is without merit.

3. A ground of a motion for new trial must be complete within itself. Accordingly, such a ground which complains of the admission in evidence of a certified copy of a deed, but which does not set forth a copy of the deed or describe its contents and who were the parties to it, is not sufficient to require a new trial.

4. The mental condition of the maker of a deed seven years after its execution can throw no light on her capacity to make a deed at the time of its execution.

5 The general rule is that a non-expert witness must give the facts upon which he bases his opinion. But the evidence objected to in ground 17 of the motion for new trial, considered in connection with its context, was admissible as the opinion of a non-expert witness, based on facts which were stated by him.

6. Where a daughter claiming land as grantee of her mother, since deceased, institutes an equitable action against the administrator of the estate of her mother, seeking a decree of title, and the administrator defends on the ground that the alleged deed was procured by fraud of the daughter, consisting of undue influence exercised over the mother, who was feeble and of weak mentality, on the trial of the issue thus raised another daughter of the alleged grantor, although interested as an heir at law of the deceased person, is a competent witness under the Civil Code (1910), § 5858 (1, 4), when offered by the administrator to testify as to declarations of the mother that she had not made a deed to the plaintiff. *Renitz* v. *Williamson,* 149 *Ga.* 241 (99 S. E. 869); *Davis* v. *Gray,* 163 *Ga.* 271 (3) (136 S. E. 81). It was erroneous to exclude the evidence set forth in the 6th and 12th grounds of the amended motion for new trial, on the grounds that the witnesses offered to give such testimony were incompetent to testify. HILL, J., dissents from this ruling.

7. Grounds 4, 7, 8, and 10 of the motion for new trial assign error on certain statements made by the judge in the presence of the jury, upon the ground that the statements amounted to expressions or intimations of opinion of what was proved upon issues involved in the case. Upon careful consideration of these grounds, it is held that the language of the court, properly construed, is not subject to this criticism.

8. An assignment of error complaining of a refusal of the judge to allow a witness on direct examination to answer a question, which fails to specify what the witness would have testified had he been permitted to answer the question, is insufficient to present any question for decision. *Cobb* v. *Coffey,* 149 *Ga.* 264 (99 S. E. 864), and cit. See also *Wyche* v. *Bank of Campbell Co.,* 161 *Ga.* 329 (6) (130 S. E. 566).

9. It appearing from uncontradicted evidence in this case that the grantor

had children other than the grantee in the deed, it was not reversible error for the court to refuse to permit a witness to answer "how many children" the maker of the deed had. It was material as to whether Mrs. Winkles had children, but not the number of children. See *Dyer v. Dyer*, 161 *Ga.* 615 (131 S. E. 535).

10. Grounds of the motion for new trial not specifically dealt with, some of which relate to rulings on admissibility of evidence, and others on the charge of the court, in so far as they were sufficient to present a question for consideration, are without merit.

11. Ground 16 of the motion for new trial assigns error because the following evidence was illegally admitted to the jury over the objections of movants: "I heard Mrs. Brock make a statement as to a conversation that she heard on her porch, in which she claimed my mother told me she never made me any deed. No such conversation ever occurred in her presence at any time." Movants objected to the admission of said evidence as follows: "Judge Davis: This witness is not competent, and I object to her testimony of any dealings or transaction with her mother." This evidence was admissible under the Civil Code (1910), § 5858 (6), because the administrator had introduced a witness who was interested in the result of the suit, and who had testified as to the transaction between the deceased and the plaintiff, and this testimony was in rebuttal of that witness.

12. As the case goes back for another trial, no ruling is made on the sufficiency of the evidence to support the verdict.

13. As there is a reversal of the judgment overruling the motion for new trial, which would render the decree nugatory, it becomes unnecessary to deal with the cross-bill of exceptions, which relates solely to the decree; consequently, the cross-bill of exceptions is dismissed.

Nos. 5851, 5856. DECEMBER 15, 1927.

Equitable petition. Before Judge Irwin. Polk superior court. December 31, 1926.

*John K. Davis*, for plaintiffs in error. *M. B. Eubanks*, contra.

HILL, J. Mrs. Cora Winkles Drake, for herself and as guardian ad litem for her minor children, brought a petition against Byrd Winkles and John Terhune as administrator upon the estate of Mrs. A. T. Winkles, praying for injunction, receiver, etc., and that the court decree a fee-simple title to a certain tract of land in Polk County, Georgia, to be in the plaintiffs. The record makes substantially the following case: On January 4, 1910, Mrs. A. T. Winkles executed and delivered to her daughter, Mrs. Cora Winkles Maroney (now Drake), a deed conveying to the daughter lot of land No. 54 in the 22d district and 3d section of Polk County, Georgia, containing 160 acres. The deed recited that the grantee was to have "a life-estate only in the grantee above named. She is to have and enjoy said lot so long as she may

live; and at the death of my said daughter her interest shall vest in her children." After the execution of the deed the mother and daughter lived together on the land in controversy until the daughter married Drake. On February 7, 1917, the daughter, who was removing from the State of Georgia into Alabama, executed and delivered to her mother, Mrs. Winkles, a deed which recited: "It is the purpose of this conveyance to correct a deed made the 4th day of January, 1910, and recorded in book 6 of deeds, page 223, on the 26th of January, 1912, from Mrs. A. T. Winkles to Cora Winkles Maroney, now Cora Winkles Drake. This deed is to be corrected to the extent the said Mrs. A. T. Winkles is to have a life-interest, with full right of possession and enjoyment of said property during her life, and with the full right to all rents, profits, and emoluments from the same as long as she may live." This deed was produced in court by the defendants, and was introduced in evidence. The first deed was witnessed by John L. Tison, and by W. H. Trawick as notary public. The latter witness, who is a lawyer, wrote the first deed for Mrs. Winkles and at her request. Mrs. A. T. Winkles died on January 10, 1925, and John Terhune was appointed administrator of her estate. He took possession of the land, and was proceeding to administer it by selling the personal property and obtaining an order to sell the land in controversy as the property of the estate of Mrs. A. T. Winkles. Mrs. Cora Winkles Drake then filed her petition first heretofore mentioned. The defendants filed an answer, not under oath, denying the material allegations of the petition, and averring that the original deed was procured by Mrs. Cora Winkles Drake by exercising undue influence over her mother, who was then of feeble mind and was incompetent to execute such a conveyance. On the trial a verdict was rendered in favor of the plaintiff against the defendants, and for $87 rent for the year 1925. The defendants made a motion for a new trial, which was overruled, and they excepted.

The defendant in error filed a cross-bill of exceptions complaining that the court erred in revoking and setting aside the original decree rendered in the case, and signing another decree in lieu thereof, in the absence of both her and her attorney, and without giving notice thereof.

1. Ground 1 of the amendment to the motion for new trial

assigns error because the following material evidence was illegally admitted to the jury over objection of movants: "W. H. Trawick testified as follows: 'As I said, my recollection is that Cora came to me, first approached me about this matter of making a deed conveying the farm to her and her children. I don't know that we discussed the details of it. I think she and her mother came to my office, and I prepared the deed the best I could according to instructions furnished me by Mrs. Winkles, the maker of the deed. It was signed by her and witnessed by Judge Tison and myself, and my recollection is that I carried it to the clerk's office to be recorded. Mrs. Winkles told me herself what she wanted provided in the deed. She was a capable woman at that time. I thought, for a woman of her education, she was very competent. There were no coercion, threats of prosecution, used on her. It was a voluntary act, so far as I could tell.'" Movants objected to the admission of such evidence and urged the following grounds of objection by their counsel: "I insist that under this evidence this witness is not competent to testify to any transaction between the parties. He acted as agent whether he did as lawyer or not, and under the law it is the duty of the parties who employed him to pay him, and he represented her; and we insist that he is not competent to testify. I object to this testimony because the deed is not accounted for, it is not offered, and no proof of its existence has been offered. Col. Trawick testified that the plaintiff, Cora W. Drake, first spoke to him about drawing this deed, and said, 'My recollection is that she spoke to me about it, and then she and her mother came to the office and discussed it, and we prepared the paper, is my recollection. She was the first one spoke to me about it.'" The court overruled these objections; and movants insist that under the showing and the evidence Col. Trawick appeared in the transaction as attorney for Cora W. Drake, and Mrs. A. T. Winkles, the other party to the deed, being dead, he was an incompetent witness to testify to any transaction between them at the time. Under the evidence the judge was authorized to hold that the attorney was not the agent or attorney of the plaintiff, Mrs. Drake, but was the attorney of Mrs. Winkles, and upon this theory he did not err in admitting the testimony objected to on the ground that the attorney was incompetent to testify under the Civil Code (1910), § 5858(5). Nor

was it error to admit the evidence over the objection that the deed was not accounted for and no proof had been made as to its existence.

2. Ground 2 assigns error "because the following material evidence was illegally admitted to the jury by the court over the objection of movants, to wit: Cora W. Drake: 'This place my mother had deeded to me. When I went away from home I did not take the deed, have never seen it since. I never carried the deed away from that house. I left it in the trunk with some other things. My and my mother's things were in the trunk together. I do not know what became of the deed. Mother did not have the deed, she turned it over to me.' Movants objected to the admission of such evidence at the time the same was offered, and then and there urged the following grounds of objection thereto: 'I object to any evidence going to the jury about any transaction between this party and her mother. She can't testify to anything said between her and the deceased party. I move to rule out all the testimony.' Which objections the court then and there overruled. Movants insist that the court erred because this testimony was necessarily based on the transaction of the making of the deed by Mrs. A. T. Winkles to plaintiff, and, Mrs. A. T. Winkles being dead, Mrs. Drake was an incompetent witness to testify." This was an objection to testimony en bloc; and a part thereof being admissible, the ground of the motion for new trial is without merit. The witness was not competent to testify that her mother made the deed to her, as that would relate to a transaction between the parties, the mother being dead (Civil Code of 1910, § 5858 (5)); but she was competent to testify, and it was material, that she left the deed in the trunk.

3. Ground 3 assigns error because of the admission of a certified copy of a warranty deed to the land in question, dated January 4, 1910, and recorded January 26, 1912, the movants objecting that "the deed is not accounted for, it is not offered, and no proof of its existence has been offered." The court thereupon allowed Col. Trawick to testify: "I know of the existence of that original deed; there was an original deed. I wrote it, witnessed it, and Judge Tison witnessed it." To which movants objected as follows: "The deed would be the best evidence as to who signed it, and I move to rule out that evidence. I don't think the loss

of the deed has been sufficiently accounted for." A ground of a motion for new trial must be complete within itself. *Brown* v. *Kendrick,* 163 *Ga.* 149 (135 S. E. 721). Where a certified copy of a written document is admitted over objection, a ground of complaint of its admission should set forth a copy of the document or its substance. *Horn* v. *Towson,* 163 *Ga.* 37 (3) (135 S. E. 487). Accordingly, this is not a good ground of the motion for new trial because it does not set forth a copy of the paper, or sufficiently describe its contents, and does not state who were the parties to the deed. It might have been a deed between entirely different parties.

4. The fifth ground assigns error because the following evidence was withheld from the jury: "Question to Col. Trawick: About that time (the 7th day of February, 1917), did Mrs. Winkles ever come to your office and call on you to fix up a deed to sell the property to Mr. Lem Parrish? A.. I am pretty sure Mrs. Winkles and Cora came to my office to see whether or not they could sell the property, and I advised them that under the deed they could not. Q. Did not see her and Mr. Parrish? A. Lem spoke to me about it. I don't recollect whether they were all there together or not. Lem talked to me about it. He was living on the place, and I think I went to his house." Movants' counsel said to the court: "I want to show that this woman didn't know that she had made a deed to her daughter, and Mrs. Winkles was at that time in possession of the land." Movants insist that this was material evidence on the question whether or not Mrs. Winkles ever made her daughter a deed. It appears from the record that the deed to Cora W. Drake was made on January 4, 1910, and the transaction testified to as set out in this ground occurred on February 7, 1917. The mental condition of the maker of the deed seven years after its execution could throw no light on her capacity to make the deed at the time of its execution, and the judge did not err in rejecting this evidence.

5. Ground 17 assigns error because of the admission over objection, of the testimony of W. H. Steadman that he never saw Mrs. A. T. Winkles, prior to January, 1910, when she was incapable for any reason to transact any business she wanted to transact. Movant objected on the ground that the testimony was an opinion, and the witness was not an expert. The evidence ob-

jected to was included in testimony of the witness as follows: "I did know Mrs. A. T. Winkles in 1910 and prior to that time, fifteen or sixteen years before she died. I lived on the farm. I lived on it, I couldn't tell you, somewhere about 1900. I knew her well from then on to her death. Fifteen years before her death, I knew her then. Her physical condition then, as to going where she wanted to, was all right as far as I know. She was able to attend to her business. I never saw her going to Rome or Cedartown about that time. I don't believe I ever did. Not at her house frequently, not often. You see I didn't live on the place then. May be just once a month. Never saw her when she was under the influence of morphine or in a stupor or anything like that, not that I know of. Never knew of her taking morphine. Never saw her prior to 1910, when she was incapable for any reason of transacting any business she wanted to transact. When I was there I had a good deal of experience with her. She was naturally intelligent, or quick in her movements. From my conversations with her at various times that I saw her, never saw her at any time when I had any reason to suppose that she was under the influence of morphine or any other drug. Never saw her at any time when I had any reason to suspect that she was not capable of attending to any business that she wanted to attend to." Considered in connection with its context, the testimony was admissible as the opinion of a non-expert witness based on facts which were stated by the witness. Civil Code (1910), § 5874; *Dyar* v. *Dyar,* 161 *Ga.* 617, 618 (131 S. E. 535), and cit.

*Judgment reversed on the main bill of exceptions; cross-bill of exceptions dismissed. All the Justices concur, except Russell, C. J., and Hill, J., who dissent in part.*

Hill, J. Grounds 6 and 12 of the motion for new trial are as follows: (6) "Because the following material evidence offered by movants was illegally withheld from the jury against the demands of movants, to wit: Question to Mrs. Emmett Bridges: What did your mother ever say about this deed [the deed from Mrs. Winkles to Cora Drake]? A. She said she didn't make it. Q. How many times did you hear her say that? A. Several times. Mr. Eubanks: I object to that. The court: I don't see how it is admissble. Judge Davis: We insist that this woman had been sick, feeble in body and mind. She stayed there on the

place, she continued to live there and control the place, and she denied this deed that they are trying to claim all the way through, that she never surrendered possession of the place and denied having made the deed. The court: I don't think the evidence would be admissible, what she said about making the deed." (12) Because the following material evidence offered by movants was illegally withheld from the jury against the demand of movants, to wit: Mrs. W. F. Fricks: She come to me and says, that heifer has got deeds to my home. The court: State what your sister said, but not what your mother said. I rule that out. Q. That was about 1915, after she married Drake? A. Yes, it was after she married him. Q. That was the first time she had offered to take possession under that deed? A. Yes, the first time I knew anything about it. Judge Davis: I want to ask this witness if her mother did not deny making the deed. The court: I have ruled that out. Judge Davis: I offer it as showing this party did not know what she was doing, was under the dominating influence of this party when she made it, and when Cora exercised any act of ownership she insisted that she did not make the deed and kept on insisting on it until she died. The court: I rule out what she said. Q. What' did your mother say about the kind of deed she got back from Cora? The court: I do not admit what she said about the deed. Judge Davis: I offer to prove by this witness that her mother told her she had gotten a straight deed back to the property and had title to it. I offer that statement as showing in connection with the mother's possession and offering to sell, as a circumstance showing that this woman was imposed on and mistreated by these parties. The court: I hold that incompetent." It is insisted that this evidence was admissible, but to this contention I can not agree. Plaintiff in error insists that such evidence was admissible under the Civil Code (1910), § 5767, which declares that declarations in favor of one's own title are admissible to prove his adverse possession. There is no contention here that the deceased was not in possession of the land in controversy at the time of her death. The record shows that she had a life-estate in the land and had possession, and therefore section 5767 is not applicable to the facts of this case. I am of the opinion that the court properly refused to admit the testimony as against the reason urged, for its admission; and for the following

reasons: The Civil Code (1910), § 5858 (1, 4), declares: "Where any suit is instituted or defended by a person insane at time of trial, or by an indorsee, assignee, or by the personal representative of a deceased person, the opposite party shall not be admitted to testify in his own favor against the insane or deceased person [whether such transactions or communications were had by such insane or deceased person with the party testifying or with any other person.] . . Where a person not a party, but a person interested in the result of the suit, is offered as a witness, he shall not be competent to testify, if as a party to the cause he would for any cause be incompetent." In *Hendrick* v. *Daniel,* 119 *Ga.* 358 (46 S. E. 438), this court held: "Under the Civil Code, § 5269, par. 1, in an action of ejectment the opposite party to the grantee of a deed from a deceased person is not competent to testify in his own behalf to conversations and transactions with such deceased person, affecting adversely the title conveyed by the deed; and under par. 5, the agent of such a party is likewise incompetent." In that case, Candler J., delivering the opinion of the court, said: "Suit was brought by John W. Daniel against Hugh L. Hendrick, to recover certain lands described in the petition. Daniel claimed under two deeds from Jeptha H. Daniel Sr., dated respectively January 1, 1898, and April 23, 1898, conveying the land in dispute. At the return term the defendant answered that he was in possession of the land only as agent for his wife, Helen Hendrick, and at that term she was made a party defendant. In their plea they admitted Mrs. Hendrick's possession, and denied the plaintiff's title or that he had any right to the possession or the rents and profits of the land. They further averred that in the fall of 1889, Jeptha H. Daniel, the grantor in the deeds to the plaintiff, who was the father of both the plaintiff and Mrs. Hendrick, put Mrs. Hendrick in possession of the land and expressed the desire that she should have it as a gift or advancement from him; that after this declaration with the express understanding that the lands were a gift from Jeptha H. Daniel to his daughter, Mrs. Hendrick, she, by and through her husband, Hugh L. Hendrick, went into possession and has so remained ever since; and that her possession has been continuous and exclusive for a space of more than seven years in the lifetime of Jeptha H. Daniel, without the payment of any rent for the land,

the seven years having elapsed before the making of the alleged deeds from Jeptha H. Daniel to the plaintiff. It was therefore claimed that Mrs. Hendrick was seized of the land in fee before the making of the deeds set out in the plaintiff's abstract of title. The plea also set up, that, after going into possession of the land under this parol gift, Mrs. Hendrick, acting through her husband as her agent, made substantial and valuable improvements on the property, which were enumerated. At the trial evidence was introduced on both sides. The jury returned a verdict for the plaintiff for the premises sued for, and mesne profits. The defendants made a motion for a new trial which was overruled, and they excepted.

"1. While the motion for a new trial as amended contains numerous grounds, the case is really controlled by a single question, viz., whether the court below erred in excluding testimony as to transactions and communications between Mrs. Hendrick and her husband and agent on the one side, and Jeptha H. Daniel, under whom both the plaintiff and Mrs. Hendrick claimed, and who had died prior to the bringing of the suit, on the other. This evidence was excluded as coming within the prohibitions respectively of the Civil Code, § 5269, par. 1, 5, the court holding, in effect, that John W. Daniel, the plaintiff, was an assignee or transferee of his deceased father, and therefore Mrs. Hendrick could not testify in her own favor against his title; and that her husband, who was admitted to have been her agent in all the transactions relating to the land, was likewise, by reason of his agency, incompetent to testify as to such transactions. The question squarely presented, therefore, is, where suit is instituted to recover possession of land by a grantee in a warranty deed, can the opposite party or his agent testify to conversations or transactions with the deceased grantor, the nature of which is to show an adverse title? This, in turn, renders necessary a discussion as to whether a grantee of land is included in the word 'assignee' or 'transferee' as used in the code section referred to.

"This court is thoroughly committed to the proposition that the act of 1889 and the subsequent acts amendatory thereof, the provisions of which have been embodied in Civil Code, § 5269, are to be literally construed, and that nothing will be added to or taken from them by judicial construction. The original act (Acts 1889,

p. 85) provided only for cases 'where any suit is instituted or
defended by a person insane at the time of trial, or by the per-
sonal representative of a deceased person.' In the case of *Wood-
son* v. *Jones,* 92 *Ga.* 662 [19 S. E. 60], which was decided Novem-
ber 6, 1893, this court held that under the act of 1889, 'the maker
of a negotiable promissory note is a competent witness in his own
favor to prove payment thereof to the payee before the note was
transferred, although the payee has since died, the action being by
the indorsee of the note, and the personal representative of the
payee not being a party thereto on either side.' In the opinion
the present Chief Justice referred to former decisions to the effect
that the terms of the act of 1889 would not be extended by con-
struction, but would be construed to the letter, quoted from the
act to the effect that 'there shall be no other exceptions allowed
under this paragraph, by any court, than those herein set forth.'
The General Assembly, which was then in session, seeing the
deficiency in the act of 1889, as illustrated by the case cited, im-
mediately thereafter, on December 9, 1893, amended it by provid-
ing that it should extend to cases where 'any suit is instituted or
defended . . by the endorsee, assignee, transferee, or by the per-
sonal representative of a deceased person.' Acts 1893, p. 53. . .
The act of 1889 and the amending act of 1893 are both remedial
statutes. The evil sought to be cured was that the living took ad-
vantage of the dead, the sane of the insane, by giving testimony
the power to contradict which was buried in the tomb or obscured by
dethroned reason. By the decision of this court in the case of
*Woodson* v. *Jones,* supra, it was brought to the attention of the
General Assembly that the act of 1889 failed of its full purpose,
and it was accordingly amended by the act of 1893. To use a
homely metaphor, by inserting in the law as it stood the word
'endorsee' the legislature healed the particular malady pointed
out by the decision in the case cited, and then, to guard against a
relapse, or the possibility of a similar attack in the future, it
inoculated the patient with the words 'assignee' and 'transferee.'
The mischief as it existed prior to the passage of the act of 1889
was plain. The act did not accomplish its full purpose, and so,
in 1893, the General Assembly amended it so as to cover all pos-
sible cases where the same mischief threatened, and where estates,
real, personal, or mixed, of deceased or insane persons might other-

wise be obtained or damaged by allowing parties to suits affecting such estates to testify to communications and transactions with such deceased or insane persons. With the full nature and extent of the evil clearly apparent, we can not believe that the General Assembly intended to protect the estate of a deceased endorsee of a note against the testimony of the living maker, at the same time allowing it to be wronged by nullifying his warranty deed to a tract of land. On what theory it can be supposed that the General Assembly sought to protect the purchaser of a note and leave unprotected the grantee of a piece of real estate we are at a loss to conceive.

"The case of Elliott *v.* Shaw, 32 Ohio St. 431, cited by counsel for plaintiff in error, we do not think is at all in point. That case held simply, that, under an Ohio statute rendering incompetent as a witness the adverse party in interest to the grantee of a deceased person, the maker of a note would not be incompetent to testify in his own behalf against the assignee of the deceased payee; and the main reason given for the decision was that the lawmaking power clearly intended to restrict the statute being construed to the adverse party in a suit by or against the grantee in a conveyance of realty. Applying to our own law the well-defined rules of construction, and having in view the purpose of the act of 1889 and the evil sought to be remedied, we are clear that it was the intention of the act of 1893 to include and protect all endorsees, all assignees, and all transferees of all kinds of property, real, personal, and mixed. It follows that the court below did not err in excluding the testimony under discussion."

The facts of the *Hendrick* case are somewhat similar to the facts of the instant case, and the principle there ruled is controlling in the case at bar; and therefore the court below did not err in excluding the testimony of the witness, who was interested in the result of the suit, being an heir at law of the deceased grantor, and who was testifying to conversations had with the deceased in her own favor. If such evidence as was excluded in this case can be held to be admissible, it would be an easy matter to avoid a solemn contract in writing conveying real estate to one of the heirs at law, by allowing other heirs at law by parol testimony to swear to conversations between themselves and the grantor, who had since died, denying the execution of the deed. It is no answer to say

that the grantee in the deed would be permitted to deny what was testified to by the interested witnesses. Indeed, it would rarely, if ever, occur that the grantee would be present on the occasion of the alleged disclaimer by the grantor in the deed. The grantee in such a case would be denied the privilege of testifying, under the Civil Code (1910), § 5858 (1), that the grantor executed the deed, and yet dozens of interested heirs at law can be permitted to testify that the grantor said in their presence, but not in the presence of the grantee, that she did not execute the deed. By no decision of this court, so far as I am aware, has it ever been declared that a witness who is an heir at law of the defendant's intestate, and who is interested in the result of the suit, by having set aside a deed of the intestate made to the grantee, who is the plaintiff in the suit, could be a competent witness to testify, under the above section of the code, that the grantor told the witness in her lifetime that she did not make the deed. The dead grantor's lips are sealed in death, and she can not speak as to the truth of the transaction; and the grantee under those circumstances is likewise prevented by the law from testifying to the truth of the transaction relative to the execution of the deed. And yet, under the decision of the majority of the court, all the other heirs at law interested in the result of the suit are permitted to testify that the deceased grantor said in her lifetime, not in the presence of the grantee, that she never made the deed, even after the intestate accepted a deed from the grantee to the land in question, correcting an error in the deed in controversy, although the Civil Code (supra) declared, "where a person not a party, but a person interested in the result of the suit, is offered as a witness, he shall not be competent to testify, if as a party to the cause he would for any cause be incompetent." If the witnesses in this case, excluded as incompetent, are permitted to testify, then any solemn contract can be nullified and "sworn away" by such evidence, when the lips of the grantor are stilled by death, and the lips of the grantee are silenced by law. Such a construction makes a farce of the evidence act of 1889, now embodied in the Civil Code (1910), § 5858. It shuts the lips of the grantor and grantee, where the grantor is dead, but permits parties interested in the result of the suit to do the very thing that is forbidden in the case of the grantor and grantee. Surely the legislature never intended such a con-

tradictory situation as that. Moreover, a careful reading of the cases of *Renitz* v. *Williamson*, 149 *Ga.* 241 and *Davis* v. *Gray*, 163 *Ga.* 271 (supra), will disclose that they are distinguishable from the case at bar and are not applicable. The distinguished trial judge ruled correctly, in my opinion, when he excluded the evidence of these witnesses who are interested in the result, of the suit, under the section of the code cited above.

RUSSELL, C. J. I concur in the judgment of reversal and in the several rulings of the majority of the court, except the 4th, 7th, and 9th headnotes. In my opinion the mental condition of the maker of any instrument may be best illustrated by extending the examination for the longest possible time, because a condition once existing is presumed to continue. I dissent from the 7th and 9th headnotes, for the same reasons that constrained me to dissent in the case of *Dyar* v. *Dyar*, 161 *Ga.* (supra).