There was legal and sufficient testimony by which the jury were authorized to find in favor of the caveator on the issue of testamentary capacity. The fact that illegal and incompetent testimony which was without probative value was also admitted in behalf of the caveator, without objection, would not operate to destroy the probative value of the legal testimony in his favor, which was in itself sufficient to authorize the verdict.
 No. 13043. NOVEMBER 16, 1939. REHEARING DENIED DECEMBER 5, 1939.
Mrs. Leonora P. Morgan, a niece of Mrs. Sallie P. Payne, was devised a remainder interest in real estate by the alleged will of Mrs. Payne, and was named therein as executrix. This instrument was offered for probate in solemn form. W. V. Bell, the only child of Mrs. Payne, filed a caveat on the sole contested ground of mental incapacity. The instrument was dated September 15, 1936. Mrs. Payne died in September, 1938. From a judgment by the court of ordinary, in favor of the caveator, the propounder appealed to the superior court, where the jury found for the caveator. The judge denied a new trial, on a motion limited to the general grounds. Although it is argued by brief for the plaintiff in error that the verdict should have been for the propounder because opinion testimony was admitted for the caveator, there was no exception to the admission of such testimony. The sole question presented is whether the evidence on the one issue of mental capacity was sufficient to authorize the verdict. The propounder made out a prima facie case by testimony of the subscribing witnesses and the draftsman of the instrument, that at the time of the signature by the decedent she was apparently of sound mind, and that there was nothing about her appearance to indicate an abnormal or subnormal mentality; and (in rebuttal) there was strong additional testimony by the propounder, her husband, and two other witnesses, all of whom had long known the decedent, as to her sound mental capacity.
For the caveator seven witnesses testified, including Dr. E. C. Brown, the physician who had attended the decedent at intervals after she suffered a stroke of apoplexy ten years previously. He testified as to her toxic condition from the kidneys, due to Bright's disease, which at times caused convulsions; as to paralysis of her *Page 433 
"whole right side," loss of "complete control of the right arm and hand and the use too," and the dragging of "her leg as she walked." He said that her paralytic condition grew worse. "I could not understand anything she would say. . . I think her mind might have been partly clear, but she could not express herself." Also, that the Bright's disease "and the apoplexy together affected her mind;" and that "arteriosclerosis is a condition which most usually comes on with senility." "I don't know whether Mrs. Payne could understand the contents of this will you have shown me and comprehend what it means, or not. She was always difficult to make understand anything. . . I have seen her at times when she did not have enough of mind and reason to have a decided and rational desire as to the disposition of her property; then I saw her at times when she was brighter, but I could not say, I would not say, that she was capable of having any lengthy understanding of anything. . . I would not think that she had mind enough to understand the meaning of that paper there that you have shown me." On cross-examination: "I would not say she could understand that, because it was not expressed the way you narrated it. I don't know whether she could interpret it that way; I don't know as she had enough mind, decided enough, to know that she wanted her son to have everything she possessed. . . I have seen her at times when she might have known what she wanted." During the year when the instrument was signed, in September, 1936, he attended her once in January, three or four times in March, once in May, and in September nine days after the signature.
D. R. Pearce testified for the caveator, that he had known the decedent intimately for about forty years, and in later years had visited her and her son two or three times a week; that "from my observation and knowledge of Mrs. Payne, I don't think she had the mental capacity to make a will;" that after the paralytic stroke, her condition "just gradually got worse; she could say a few words," but "her tongue just would not work, and you could not sit down and carry on a conversation with her, talk like ordinary people;" that from June 5, 1935, "she grew gradually worse;" that "from my observation of and experience with Mrs. Payne, her mental powers were weakened; after that stroke she had the mind of about a six or eight-year-old child; she just did not have it like *Page 434 
she did before she had that stroke; she just did not have the mentality that she had; she was just gone, was more childish, and she grew gradually worse. . . I don't think she could have comprehended or understood what was in the will you hand me, for the lack of sufficient mind. I think she was too childish to have comprehended what it meant." On cross-examination, explaining what he meant by "childish" and the "mind of a six or eight-year-old child:" "I think she had sufficient mind to have a deep devotion for her son, a six-year-old child will have a deep devotion for their parents. I don't think that she really had mind enough to know about a thing like following out and giving expression to that devotion by giving her son everything she had. I doubt if she had sufficient mind to really know, without some suggestion, anything about what she wanted to come of her property. I think she knew her kinfolks. I think she knew very little about her property if she had any; she may have known in a vague and indistinct way that she had some property, and I think that is about all she knew. I think she knew very little about it, and did not have mind enough to know much about it. You can take a six or eight-year-old child, and they have their affections and go along, but don't understand the problems of life."
Miss Faustine Smith testified for the caveator, that since she was a baby she had known the decedent; that her physical condition with respect to ability to talk grew gradually worse, "and that same great limitation on her powers of speech was even worse, of course, in 1935, four years ago, and that was true in 1936, all of both those years; she could not think clearly after that stroke of paralysis, her mind was very foggy; it did not come and go, it was continuous; . . any effort would cause her great mental suffering and physical suffering, because she had high blood pressure; . . she did not at any time after she had this stroke have sufficient mind to have a decided and rational desire what she wanted to do with her property; her mind was distempered by this disease. . . That condition grew worse; it was very decidedly worse in 1935 than in 1927; it was decidedly worse in 1936 than in 1927." Her sister, Mrs. Mattie Batts, testified as to her frequent visits to the home of the decedent, as to the physical manifestations of the condition of the decedent, and: "I think her mind was foggy; it was worse at times, but I would say it was continuous, never got any better. I *Page 435 
don't think she had mind enough to have a decided clear-cut idea about the disposition of her property. . . This is the [instrument] that I saw. Mrs. Payne did not have mind enough to understand what the paper means." Mrs. Beulah Beverly, who testified that she had been a frequent visitor to the home of the decedent during the ten years after the stroke of paralysis, gave similar testimony, and said that from her knowledge of the decedent "she did not have mind enough to have a decided and rational or reasonable desire as to the disposition of her property." The caveator and his wife, son, and daughter-in-law of the decedent, with whom she had lived for many years, testified to like effect. The son stated that she was about seventy years old at the time of the stroke, and about eighty at her death; that her physical and mental condition was a "steady decline," and this was also true on September 15, 1936, the date when the paper was signed; that he was familiar with the purported will; and "I don't think she was capable of having a decided and rational desire as to the disposition of her property" on either that date or an earlier stated date; "that is my best judgment from my knowledge of her. I am sure she did not have sufficient mind to understand the purport and meaning of the will dated June 5, 1935; otherwise she would not have signed it. My testimony is the same in respect to the will dated September 15, 1936."
1. "Every person may make a will, unless laboring under some legal disability arising either from a want of capacity or a want of perfect liberty of action." Code, § 113-201. "An incapacity to contract may coexist with a capacity to make a will. The amount of intellect necessary to constitute testamentary capacity is that which is necessary to enable the party to have a decided and rational desire as to the disposition of his property. His desire must be decided, as distinguished from the wavering, vacillating fancies of a distempered intellect. It must be rational, as distinguished from the ravings of a madman, the silly pratings of an idiot, the childish whims of imbecility, or the excited vagaries of a drunkard." § 113-202. "An insane person generally may not make a will. A lunatic may, during a lucid interval. A monomaniac may make a will, if the will is in no way the result *Page 436 
of or connected with his monomania. In all such cases it must appear that the will speaks the wishes of the testator, unbiased by the mental disease with which he is affected." § 113-204. "Eccentricity of habit or thought does not deprive a person of the power of making a will; old age and weakness of intellect resulting therefrom does not, of itself, constitute incapacity. If that weakness amounts to imbecility, the testamentary capacity is gone. In cases of doubt as to the extent of this weakness, the reasonable or unreasonable disposition of his estate should have much weight in the decision of the question." § 113-205. In accordance with these statutory provisions, it has been held by this court: "A person has testamentary capacity who understands the nature of a testament or will, viz., that it is a disposition of property to take effect after death, and who is capable of remembering generally the property subject to disposition and the persons related to him by the ties of blood and of affection, and also of conceiving and expressing by words, written or spoken, or by signs, or by both, any intelligible scheme of disposition. If the testator has sufficient intellect to enable him to have a decided and rational desire as to the disposition of his property, this will suffice." Slaughter v. Health, 127 Ga. 747,749 (57 S.E. 69, 27 L.R.A. (N.S.) 1), and cit. For other statements of the rules determining testamentary capacity, seeHill v. Deal, 185 Ga. 42, 46 (193 S.E. 858), and cit.;Griffin v. Barrett, 183 Ga. 152, 164 (187 S.E. 828), and cit.; Id., 185 Ga. 443, 444 (195 S.E. 746); Martin v.Martin, 185 Ga. 349, 352 (195 S.E. 159).
2. "Where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor; but if the issue shall be as to the existence of a fact, the opinions of witnesses, generally, shall be inadmissible." Code, § 38-1708. "The opinions of experts, on any question of science, skill, trade, or like questions, shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." § 38-1710.
3. While it was held by this court, as early as 1849, inPotts v. House, 6 Ga. 324 (3), 335 (50 Am. D. 329), that "The opinions of the subscribing witnesses to a will, as to the sanity of the testator, are admissible, without stating the facts upon which they are founded," which ruling was followed inScott v. McKee, *Page 437 105 Ga. 256 (2), 258 (31 S.E. 183), and Dyar v. Dyar, 161 Ga. 615
(2), 619 (131 S.E. 535), the distinction was drawn in thePotts case that "The mere opinions of witnesses, other than physicians and the attesting witnesses, are not admissible, unless accompanied with the facts on which they are founded; but having stated the appearance, conduct, conversation, or other particular facts, from which the state of the testator's mind may be inferred, they are at liberty to express their belief or opinion, as the result of those facts." See, as to the opinions of non-experts in such cases, accompanied by stated facts,Merritt v. Wallace, 173 Ga. 435, 436 (160 S.E. 610), and cit.; Dean v. Littleton, 161 Ga. 651 (131 S.E. 507);Pennington v. Perry, 156 Ga. 103 (6) (118 S.E. 710);Snell v. Snell, 165 Ga. 724 (2), 726 (142 S.E. 96);Winkles v. Drake, 165 Ga. 335 (5) (141 S.E. 67);Credille v. Credille, 131 Ga. 40 (61 S.E. 1042); Compton
v. Porterfield, 155 Ga. 480 (117 S.E. 464), and cit.;Brown v. McBride, 129 Ga. 92 (2), 95 (58 S.E. 702);Proctor v. Pointer, 127 Ga. 134 (2) (56 S.E. 111); Conn. Mutual Life Ins. Co. v. Lathrop, 111 U.S. 612, 6224 Sup. Ct. 533, 28 L. ed. 536. However, as was recently pointed out by this court, in Smoot v. Alexander, 188 Ga. 203 (3 S.E.2d 593): "What is mental capacity to make a will is a question of law. On the trial of an issue of devisavit vel non, whether the alleged testatrix had mental capacity to make a will at the time of signing the paper is a question for decision by the jury, and a witness can not testify as to such legal conclusion." (Italics ours.) See Travelers Insurance Co. v. Thornton, 119 Ga. 455,456 (46 S.E. 678), and Slaughter v. Health, supra, cited in the Smoot case; Patterson v. State, 86 Ga. 70,72 (12 S.E. 174); Griggs v. State, 59 Ga. 738 (3);Taylor v. State, 135 Ga. 622 (6) (70 S.E. 237); Allison
v. Wall, 121 Ga. 822 (49 S.E. 831). This rule applies with equal force to expert and non-expert testimony; the only distinction being that a non-expert witness in expressing his opinion as to the mental condition of the deceased must narrate the facts and circumstances upon which his conclusion is based, whereas an expert witness can express his opinion as to that condition, upon proof being made that he was in a position to form an expert opinion, without the necessity of stating the facts forming the basis of his conclusion. Taylor v. State,83 Ga. 647 (9), 658 (10 S.E. 412); Central Railroad v.Senn, 73 Ga. 705 (2), 711; Augusta Summerville R. Co. v.Dorsey, *Page 438 68 Ga. 228, 237; Hammond v. State, 156 Ga. 880 (2), 882 (120 S.E. 539); Potts v. House, supra. An exception to the rule also permits an expert witness to state his opinion or conclusion from a hypothetical question based upon the testimony of other witnesses. Code, § 38-1710; Potts v. House, supra;Choice v. State, 31 Ga. 424 (4); Southern Bell TelephoneCo. v. Covington, 139 Ga. 566 (7) (77 S.E. 382).
But, as already indicated, neither an expert nor a non-expert witness is permitted to express an opinion upon the ultimate conclusion as to whether the testator was or was not possessed of that mental capacity which is necessary to make a will; and this is true whether any such witness does or does not narrate the facts upon which to base any such opinion. The recent decision of this court in Metropolitan Life Insurance Co. v. Saul,189 Ga. 1 (5 S.E.2d 214), is not in conflict with this interpretation of the rule, which was there recognized. As was there in effect pointed out, with other distinguishing "circumstances" which "obtained" in that case, the statement of witnesses related to the existence of a substantive fact, even though the language might have corresponded more or less with the terms of the policy; that is, whether the plaintiff was totally disabled from performing any sort of labor and whether this condition was permanent. Merely that in testifying to a state of fact the expert witnesses may have used language more or less identical with that used in the policy would not prevent the testimony from relating to a question of fact rather than a question of law. Where the question was asked as a question of fact, and not whether the disability measured up to a proper legal interpretation of the language of the policy, the fact that under the decisions of this court a proper interpretation of the policy might not have required proof going to the full extent of the witness's answers would not convert the answers as related to a question of fact into answers seeking to interpret the legal rule as measured by the language of the policy.
4. In this case there was properly admitted opinion testimony from non-expert witnesses as to the mental condition of the testatrix, accompanied by the facts and circumstances on which their opinions were based, which authorized the jury to find that the testatrix was incompetent to make a will, under the rules of law set forth in the first division of this opinion. There was also *Page 439 
competent opinion testimony by a physician which authorized the verdict for the caveator. It is true that this non-expert witness also testified to the ultimate legal conclusion whether the mental condition of this testatrix precluded her from making a will; and that this testimony, although admitted without objection, had no probative value, for the reason that this testimony could not be accounted such secondary evidence as, if admitted without objection, would support a verdict. Secondary evidence, while not the best evidence, and while inadmissible on proper objection unless it be shown that the primary evidence is unavailable, will nevertheless support a verdict, either upon such a showing being made or even in the absence of such showing, where it is admitted without objection. Georgia Coast c. R. Co.
v. Herrington, 14 Ga. App. 539 (2) (81 S.E. 814); Bull v.Carpenter, 32 Ga. App. 637, 639 (124 S.E. 381). The same rule would apply to an opinionative statement by a witness, even though it be unsupported by a statement of the necessary facts and circumstances on which it is based, upon a question of opinion about which the witness is authorized to testify, as distinguished from the ultimate legal conclusion involved in the case. There also, where no objection is urged to such an opinion, it can not be questioned for the first time upon review, as incompetent and without probative value. Hutchinson v. State,8 Ga. App. 684 (70 S.E. 63). But where, as here, the non-expert witness in a portion of his testimony undertook to give his opinion on the ultimate legal question which it was for the jury to decide, by stating "I don't think [the deceased] had the mental capacity to make a will," such testimony, whether objected to or not, or whether it was accompanied by his reasons in support of such opinion, would be totally without probative value, the same as hearsay testimony, inasmuch as a witness is not permitted to give testimony at all on that ultimate question of law. However, the admission without objection of this illegal testimony, which was without probative value, would not operate to nullify the probative value of the proper testimony by this witness, by a physician, and by several non-expert witnesses, upon the question of fact as to the mental condition of the testatrix at the time the will was executed, from which the jury were authorized to find that she was then unable to execute the will.
Judgment affirmed. All the Justices concur. *Page 440